Paula **VIENNEAU, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

Allen **SHANKS, Sheriff, Sauk County Jail, et al., Defendants.**

No. 76–C–659.

United States District Court, W. D. Wisconsin.

Jan. 14, 1977.

---

Carol W. Medaris, Corrections Legal Services Program, Madison, Wis., for plaintiff.

Paul Newcomb, Corporation Counsel, Baraboo, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983. Plaintiff alleges in her complaint that she is presently confined in the county jail, Sauk County, Baraboo, Wisconsin, in this district, awaiting trial on a criminal charge, and that the jail authorities are systematically reading all of her non-legal

outgoing mail. This opinion concerns: (1) plaintiff's motion for a preliminary injunction prohibiting defendants from reading, copying, or distributing her letters or from interfering with her correspondence in any other manner; and (2) plaintiff's motion for certification of a class representation pursuant to Rule 23, Federal Rules of Civil Procedure.

Jurisdiction is present pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

On the basis of the affidavits submitted by plaintiff, plaintiff's counsel,[1] and defendant Allen Shanks, I make the following findings of fact for the purpose of these motions only.

### Facts

Plaintiff has been incarcerated in the Sauk County jail as a pretrial detainee since September 8, 1976, except for approximately two or three weeks in September which she spent in the Winnebago Mental Health Institute and approximately two to three weeks in December which she spent in the Mendota Mental Health Institute. Defendant Shanks is the sheriff of Sauk County and is responsible for the policy governing the operation of the Sauk County jail and the conduct of its personnel. Defendants Sue Goette and Cindi Shanks are jail matrons at the jail. Defendant Mauch is the district attorney for Sauk County.

Since her confinement began, plaintiff has written letters to Brother Philip Valley, Order of St. Benedict in New Hampshire, who has been plaintiff's advisor and spiritual guide since approximately 1973. Also, since her confinement, plaintiff has written to a psychiatrist in New York, her nine year-old son, her sister, her parents, her estranged husband, and personal friends, all of whom live in either New Hampshire or Massachusetts. Plaintiff's letters to these people include discussions of what is happening to her, her general feelings, and her feelings of depression. Plaintiff's letters have included one specific reference to a suicide attempt by plaintiff, an attempt which was terminated voluntarily by plaintiff. Plaintiff has no friends or family in Wisconsin with whom she can discuss personal matters comfortably.

Defendants have reason to believe that plaintiff has suicidal tendencies and that on one occasion plaintiff did attempt suicide in the jail. In order to prevent suicide attempts by plaintiff, defendant Allen Shanks ordered the placement of a camera facing plaintiff's cell and a camera facing the "day room" both of which are monitored 24 hours per day. Plaintiff has been kept in a cell block by herself during her entire stay at the Sauk County jail except on one occasion.

Sometime in mid-October, 1976, plaintiff asked defendant Cindi Shanks whether plaintiff's mail was being monitored and defendant Cindi Shanks said that it was not. However, in view of plaintiff's possible suicide attempts, on October 26, 1976, defendant Allen Shanks directed that all mail sent by plaintiff to people, other than her attorney, a judge, the governor, the attorney general or the Division of Corrections, should be read. Defendants Cindi Shanks and Goette were instructed to make four copies of all outgoing mail and mark them "file," "matrons," "sheriff," and "district attorney."

At least since October 26, defendant Mauch has received copies of all of plaintiff's non-legal mail. Defendant Mauch has stated that this practice was undertaken for the purpose of providing plaintiff's counsel in the state criminal prosecution with any exculpatory evidence that might appear in these letters. Defendants Goette and Cindi Shanks have on occasion commented to plaintiff about personal details in plaintiff's letters. In particular, defendant Cindi Shanks has stated to plaintiff, "Everyone reads your mail. Don't you know your life is an open book?" On another occasion, defendant Cindi Shanks has commented to plaintiff about references plaintiff made to her in a letter to Brother Philip Valley.

---

1. I consider it an open question whether, for any purpose beyond the present motions, the testimony of plaintiff's attorney in this action should be received.

As a consequence of this monitoring of plaintiff's outgoing non-legal mail, plaintiff now finds it difficult to write at all, particularly to Brother Philip to whom she would like to express her thoughts and her psychological and spiritual distress.

For approximately four days in late December, the personnel at the Sauk County jail refused to mail plaintiff's correspondence in retaliation against plaintiff for having filed this lawsuit. It was at about this time that plaintiff was informed that all incoming mail addressed to plaintiff was to be opened and checked in plaintiff's presence.

## Opinion

### (1) *Plaintiff's Motion for a Preliminary Injunction*

In order to succeed in her motion for a preliminary injunction, plaintiff must demonstrate: that she has a reasonably good chance to succeed on the merits; that there is a significant threat of irreparable harm to the plaintiff if the injunction is not granted; that the balance of harms to the defendant and plaintiff if an injunction is or is not issued favors issuance; and that the public interest will not be disserved by issuance of the injunction. *See generally Doeskin Products v. United Paper Co.,* 195 F.2d 356, 358–59 (7th Cir. 1952); *Selchow & Righter Co. v. Western Printing & L. Co.,* 112 F.2d 430, 431–32 (7th Cir. 1940).

If in this suit, plaintiff is able to demonstrate that the defendant officials, acting under color of state law, are depriving her of an individual interest protected by the Constitution of the United States, and that this individual interest is accorded a high order of importance by the constitution, defendants will bear a heavy burden of justification.

It is clear that one's individual interest in not having one's letters read by governmental officers is protected and accorded a high order of importance by the First Amendment, and that defendants are impairing this individual interest of the plaintiff. Also, the First Amendment recognizes the individual interests of the persons with whom plaintiff corresponds in the integrity of that correspondence. See *Procunier v. Martinez,* 416 U.S. 396, 408–409, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Therefore, ultimately in this suit, defendants will be required to show that a governmental interest, also of a high order of importance, is sought to be ₁vindicated and that the particular means used to vindicate it is no more than that reasonably necessary for the purpose.

Apparently plaintiff's release prior to trial has been subjected by a state court to conditions which plaintiff is unable to meet. Therefore, she is confined. No challenge to this determination has been raised in the present action in this court. However, the only legitimate governmental interest in her confinement is to ensure her presence at trial (which I consider to be a governmental interest of a high order of importance), and she may be subjected only to those restrictions reasonably necessary to ensure her presence at trial. *Duran v. Elrod,* 542 F.2d 998 (7th Cir. 1976); *Inmates of Milwaukee County Jail v. Petersen,* 353 F.Supp. 1157 (E.D.Wis.1973).

Thus far, defendants have offered but one serious justification for the challenged interference with plaintiff's mail: the prevention of her suicide.[2] A successful suicide attempt by plaintiff would undeniably prevent her presence at trial. Obviously, a corollary and more humane governmental interest is also present: if detention

**2.** A second justification has been offered, namely, that opening plaintiff's outgoing mail and providing copies of it to the district attorney make it possible for him to furnish to plaintiff's attorney in the defense of the state criminal prosecution any exculpatory information which may be discovered in the letters. After some reflection, I have decided that the most merciful treatment of this incredible sug-

gestion is to pretend that it was never uttered. The entire procedure of making four copies and sending one to the prosecutor prompts grave doubts about the genuineness of the sheriff's assertion that prevention of suicide is the true reason for reading plaintiff's mail. However, for present purposes, I resolve those doubts in defendants' favor.

in the jail is required for any purpose, and if there is reason to believe she may be disposed to suicide, the jail keeper is obliged to exercise his control over plaintiff's environment in such a way as to protect her from herself during her detention.

■ The critical question in this case is whether it is likely that defendants will be able ultimately to show that reading the plaintiff's mail is a reasonably necessary means to vindicate the primary governmental interest in ensuring plaintiff's presence at trial and the corollary governmental interest in protecting any detainee from himself or herself during any period of detention. I consider it unlikely that defendants can meet this burden.

There is available to them the other means apparently already being employed: isolation, constant observation, control of the contents of the cell, periodic searches of the cell, control of visitation, and physical inspection of the envelopes or packages received by the plaintiff. Of course, such precautions are not certain to succeed, but they hold a considerable probability of success. Conceivably, a particular outgoing letter from the plaintiff might contain information detailed enough to permit defendants to adopt more specific preventive measures at specific times. But this possibility must surely be deemed remote. I conclude that the defendants are unlikely to be able ultimately to show that this massive intrusion upon the First Amendment individual interests of the plaintiff and of her correspondents and prospective correspondents in free and private communications is reasonably necessary to vindication of the governmental interest in ensuring her presence at trial and the corollary governmental interest in protecting her from herself while detained.

■ From what I have said, it also follows that if the preliminary injunction is not granted, there is a significant threat of irreparable harm to the First Amendment rights of plaintiff and of her correspondents; that this threatened harm to her definitely outweighs any threat of harm to the defendants if the injunction is not issued; and that the public interest in First Amendment freedom of communication will be served by issuance of the injunction.

*(2) Plaintiff's Motion for Class Certification*

■ Plaintiff has also moved that this action be provisionally certified as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of all persons who are, or become during this litigation, confined at the county jail in Sauk County. However, plaintiff has provided virtually no evidence concerning the class aspects of this case. Nowhere in the record is there any evidence as to the number of people presently confined or likely to be confined in the jail. Further, there has been no clear delineation of class membership: should the class include all persons confined or likely to be confined or only persons so confined to assure their presence at trial? The suggestion by defendants that unusual measures have been adopted in plaintiff's case also gives rise to questions about the certification of a class action.

### Order

I. On the basis of the entire record presented thus far in this case, plaintiff's motion for a preliminary injunction is hereby granted in part and denied in part, and it is ordered that the defendants, their employees and agents:

(1) shall not open or otherwise inspect the contents of any incoming or outgoing letters between plaintiff and the following persons:

(a) any officer of federal, state, or local government, and

(b) any person licensed to practice law in any state; and

(2) shall not, in the absence of a duly obtained search warrant, open, read, or inspect any outgoing mail from the plaintiff.

II. It is further ordered that except as to the incoming mail described in I(1)(a), above, defendants, their employees and agents may open incoming envelopes and

packages and inspect the contents thereof, provided that the opening and inspection shall be done only in the presence of the plaintiff and provided that the mail shall not be read.

III.   It is further ordered, on the basis of the entire record presented in this case thus far, that the plaintiff's motion for a provisional class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure is hereby denied.