Ralph J. BELL, Individually and as Conservator and Guardian for Sam H. Bell, and Rose Ann Bell, Plaintiffs,

v.

COUNTY OF WASHINGTON COUNTY, IOWA, Yale H. Jarvis, Francis L. Stigers, and Eileen Russell, Defendants.

Civ. No. 88–56–D–2.

United States District Court,
S.D. Iowa,
Davenport Division.

June 22, 1990.

John C. Hendricks, Muscatine, Iowa, Patrick W. Driscoll, Davenport, Iowa, for plaintiffs.

Elliott R. McDonald, III, Davenport, Iowa, for Wash. County, Ia., Yale Jarvis, Francis L. Stigers, Rich. Allison, Alice Beneischek and Eileen Russell.

J. Hobart Darbyshire, Davenport, Iowa, for Francis L. Stigers.

RULING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER OF DISMISSAL

VIETOR, Chief Judge.

The court has before it defendants' motion for summary judgment. Plaintiffs have resisted and oral arguments have been heard.

Plaintiff Ralph J. Bell is the conservator and guardian for Sam H. Bell, as well as his father, and plaintiff Rose Ann Bell is Sam's mother. Defendant County of Washington County, Iowa (County) is an Iowa municipality. The individual defendants were, at all relevant times, employees of the County. Defendant Yale H. Jarvis is the Washington County Sheriff. Defendant Francis L. Stigers was a jailor at the Washington County Jail and defendant Eileen Russell is a communications operator at the Washington County Jail.

Plaintiffs' claims arise out of the events surrounding Sam Bell's suicide attempt while he was a prisoner in the Washington County Jail on November 6 and 7, 1987. The complaint states claims predicated on 42 U.S.C. § 1983, which allege that defendants violated Sam's constitutional rights, as well as pendent claims based on state tort law. Defendants move for summary judgment on plaintiffs' section 1983 claims. If defendants' summary judgment motion is granted, defendants also ask that the pendent claims be dismissed.

SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage*, 837 F.2d 836, 838 (8th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf*, 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving party must produce is not precisely measurable, but "the nonmoving party must produce enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d

202 (1986); *Johnson*, 669 F.Supp. at 295–96.

■ On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences to be drawn from the facts. *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1225 (8th Cir.1983); *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir.1981).

## FACTS

The following facts are undisputed. On November 6, 1987, at approximately 10:26 p.m., Officer Jeff Richards, a City of Washington, Iowa, police officer, stopped Sam Bell's vehicle. After Sam failed a field sobriety test, Officer Richards arrested him and charged him with operating a motor vehicle while intoxicated in violation of § 321J.2 of the Iowa Code. Officer Richards also arrested Roy Robertson, a passenger in Sam's vehicle, on a charge of public intoxication.

Officer Richards took both Sam and Roy to the Washington County Safety Center.[1] Roy, who was seventeen years old, was released to the custody of a relative and was processed through the juvenile court authorities in Louisa County. Sam, who was eighteen years old, was booked and processed as an adult by the Washington County Jail staff.

At the jail, Officer Richards read Sam his Miranda rights and questioned him regarding his activities earlier that evening. Officer Richards also gave Sam an intoxilyzer breath test which revealed that Sam's breath alcohol concentration was .150 grams of alcohol per 210 liters of breath. Officer Richards turned the remainder of the booking process over to Jailer Fran Stigers.

During the booking process, Jailer Stigers took the following possessions from Sam: his shoes, his jacket, a pocket knife, $.40 change, a wallet, and two condoms. Although Jailer Stigers performed a pat search of Sam's person, he failed to detect and confiscate Sam's belt. Jailer Stigers and Sam exchanged the following comments during the booking process:[2]

Stigers: Have you ever been in jail before?

Sam: Nope, first time, first time for everything. Well, I think I'll shoot myself.

Stigers: Well sorry we don't have a gun handy.

Sam: Too bad.

Stigers: So you're going to have to live through it like everybody else does.

Sam: A 45.

On one of the booking forms entitled "Arrest Report" which Jailer Stigers filled out, there is a box which can be checked if the jailer suspects that the prisoner is a suicide risk. Although Sam made the above-mentioned comments regarding suicide, Jailer Stigers did not believe that Sam was a suicide risk. In accordance with his belief, Jailer Stigers did not check the "suicide risk" box.

After completing the booking process at approximately 11:14 p.m., Jailer Stigers placed Sam in a cell adjacent to the "bull pen" area. The prisoners housed in the "bull pen" area could see and talk with Sam, but Sam was the only occupant of his cell. After placing Sam in his cell, Jailer Stigers conducted two jail checks. He conducted his last check of the cell block area at 11:46 p.m., at which time he observed Sam sleeping.

At midnight, Richard Allison replaced Fran Stigers as the jailer on duty.[3] Jailer

---

**1.** The Washington County Safety Center houses the Washington County Sheriff's Department, the County Jail, the Washington City Police Department, and the dispatch and communications center for the City.

**2.** The comments mentioned in the text constitute only a portion of the entire conversation between Officer Richards, Jailer Stigers, and Sam, which occurred during the booking pro-

cess. The conversation was taped and a transcript of the entire conversation is contained in Exhibit 14 which is attached to the parties' stipulated statement of facts.

**3.** Plaintiffs originally had named Richard Allison as a defendant. They also had named Alice Benischek, the communications operator who had been on duty until midnight, as a defendant. The parties stipulated to the dismissal of

Allison entered the cell block area to dispense medication at approximately 12:10 a.m., but does not remember seeing Sam at that time. A little while later, prisoner Bridges noticed Sam hanging from his cell door by his belt. Prisoner Bridges alerted the other prisoners and they activated the jail's emergency alarm system at 12:28 a.m. and again at 12:29 a.m.[4] When the alarm went off, Jailer Allison was in another area of the Center but he quickly returned to the cell block area. Jailer Allison, a trained paramedic, performed cardiopulmonary resuscitation on Sam, restarted his heart, and at 12:30 a.m. he requested an ambulance which took Sam to a local hospital for further treatment.

Plaintiffs allege that as a result of the November 7th incident, Sam suffered physical injuries and severe, extensive, and permanent brain damage.

## DISCUSSION

■ To state a claim under 42 U.S.C. § 1983 plaintiffs must "allege deprivation of a right, privilege or immunity secured by the Constitution and laws of the United States through the conduct of persons acting under color of state law." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986), *quoted in, Harpole v. Arkansas Dept. of Human Services*, 820 F.2d 923, 925 (8th Cir.1987). It is undisputed that defendants were acting under color of state law. Plaintiffs allege that defendants violated Sam's constitutional rights under the eighth and fourteenth amendments to the United States Constitution as a result of the failure of some of the defendants to follow the Washington County Jail Policies and Procedures, to predict that Sam was a suicide risk, and to take precautions to prevent his suicide attempt. (Plaintiffs' fourteenth amendment claim appears to be based on substantive due process rather than procedural due process.)

Plaintiffs concede that if the defendants' acts and/or omissions constitute only negligence, such negligence would not support a claim of deprivation of constitutional rights under section 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiffs must show that defendants' acts and/or omissions demonstrate a "deliberate indifference" to Sam's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Because this is a prisoner suicide case, in order to prevail under section 1983 for a violation of substantive rights, under either the eighth or fourteenth amendment, plaintiffs must establish that defendants displayed "deliberate indifference" to a strong likelihood, rather than a mere possibility, that Sam Bell would attempt suicide. *Edwards v. Gilbert*, 867 F.2d 1271, 1274–76 (11th Cir.1989).

### A. Section 1983 Action Against Eileen Russell

■ Defendant Eileen Russell was the communications operator on duty when Sam attempted suicide. Plaintiffs allege that defendant Russell failed to properly monitor the cell block area via the jail's closed circuit t.v. system. Plaintiffs, however, have failed to produce legally sufficient evidence from which a reasonable jury could find that defendant Russell displayed "deliberate indifference" to a strong likelihood that Sam would attempt suicide. The summary judgment record contains no evidence that shows that defendant Russell possessed any knowledge regarding Sam's arrest and suicide potential. Accordingly, defendants' motion for summary judgment on plaintiffs' section 1983 claims will be granted as to defendant Russell.

### B. Section 1983 Action Against Francis Stigers

#### 1. MERITS

■ Plaintiffs allege that defendant Stigers, among other things, failed to prop-

---

Allison and Benischek, and they are no longer parties to this lawsuit.

4. The jail is equipped with a closed circuit t.v. system with which the communications operator on duty can monitor the cell block area

while performing his/her other duties. Eileen Russell, who was the operator on duty, did not notice anything on the monitor and jail personnel were unaware of Sam's suicide attempt until the prisoners activated the alarm system.

erly search Sam and confiscate his belt, failed to predict that Sam was a suicide risk, and failed to take appropriate precautions to prevent Sam's suicide attempt. The summary judgment record demonstrates that genuine issues of material fact exist regarding whether defendant Stigers was "deliberately indifferent" to a strong likelihood that Sam would attempt suicide. For example, genuine issues of material fact exist regarding the seriousness of Sam's suicide threat and whether Sam fit the prisoner "suicide profile", which may be relevant to the "likelihood" of Sam's suicide attempt.

The summary judgment record shows that during the booking process Sam told defendant Stigers that he did not suffer from any mental disorders. The record also shows that Sam was intoxicated at the time of his arrest and that he made a suicide threat during the booking process. Defendants suggest that Sam's suicidal statements do not constitute a serious suicide threat, but were merely casual, offhand statements. I have listened to the tape of the "booking" conversation and my ear detected a consistent note of despondency in Sam's voice throughout the lengthy interview. Sam's substantive answers and comments also suggest a feeling of despondency.

This is not a case where there was no suicide threat. *See, e.g., Rellergent v. Cape Girardeau County, Mo.,* 724 F.Supp. 662, 666 (E.D.Mo.1989) (in the absence of a previous threat or an earlier attempt at suicide, official conduct in failing to prevent a suicide does not constitute deliberate indifference). Nor is it a case where it is obvious that Sam's suicidal statements were said in jest. *See Estate of Cartwright v. City of Concord,* 856 F.2d 1437, 1438 (9th Cir.1988) (under the circumstances, jailers reasonably believed that prisoner's suicidal comments were a continuation of a joke that prisoner's companion had started earlier in the evening). Instead, this is a case where there is a genuine issue of material fact regarding whether Sam made a serious suicide threat which should have alerted defendant Stigers to Sam's suicide risk potential. This issue is best resolved by the jury after they have had a chance to hear and evaluate all of the relevant evidence.

### 2. QUALIFIED IMMUNITY

■■■ Defendants also move for summary judgment on the basis of qualified immunity. To prevent bare allegations of malice from subjecting government officials to either the costs of trial or the burdens of far-reaching discovery, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity defense involves a balancing of competing social interests so that officials who knowingly violate the law are held liable for their actions while allowing officials to reasonably perform their assigned duties without the fear of a lawsuit. *Arcoren v. Peters,* 829 F.2d 671, 673 (8th Cir.1987) (en banc).

■■■ To determine the scope of the qualified immunity test, the court must "focus on the specific nature of the conduct complained of and the state of the law with respect to the identified conduct at the time the official acted." *Myers v. Morris,* 810 F.2d 1437, 1459 n. 16 (8th Cir.1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted).

The issue before this court is whether Sam Bell's liberty interests in personal security and freedom from punishment under the due process clause of the fourteenth amendment were clearly established on November 7, 1987, the date Sam attempted

suicide. Was Sam entitled to have the jail personnel not be deliberately indifferent to a strong likelihood that he might harm himself?

■ A pretrial detainee is entitled to, at a minimum, at least as much protection as that afforded convicted prisoners under the fourteenth amendment and no less a level of medical care than that required for convicted persons by the eighth amendment. *E.g., Colburn v. Upper Darby TP*, 838 F.2d 663, 668 (3rd Cir.1988). *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ Since at least 1976, it has been clearly established that deliberate indifference to serious medical needs of prisoners constitutes "unnecessary and wanton infliction of pain" which is proscribed by the eighth amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The *Estelle* standard applies to cases where a prisoner had a serious medical need for psychological or psychiatric treatment. *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1187 (5th Cir.1986). *See Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981). *See also Bee v. Greaves*, 744 F.2d 1387, 1395 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

At the time of Sam Bell's suicide attempt, the deliberate indifference standard had not been applied in the context of a jail suicide in the Eighth Circuit. Before November, 1987, however, other courts had sustained the viability of complaints alleging that jail officials demonstrated deliberate indifference to the strong likelihood that a prisoner would attempt suicide. *See Partridge*, 791 F.2d at 1187; *Roberts v. City of Troy*, 773 F.2d 720, 723–25 (6th Cir.1985); *Madden v. City of Meriden*, 602 F.Supp. 1160, 1163–64 (D.Conn.1985); *see also Jackson v. City of Chicago*, 645 F.Supp. 926, 928 (N.D.Ill.1986); *Matje v. Leis*, 571 F.Supp. 918, 930–31 (S.D.Ohio 1983); *cf. Vienneau v. Shanks*, 425 F.Supp. 676, 679–80 (W.D.Wis.1977) (if detention in the jail is required for any purpose, and if there is reason to believe the prisoner may be disposed to suicide, the jail keeper is obliged to exercise his control over the prisoner's environment in such a way as to protect him from himself during his detention).

As noted, supra, plaintiffs have generated a jury question regarding whether defendant Stigers displayed a deliberate indifference to the strong likelihood that Sam would attempt suicide, rather than being merely negligent. I now conclude that the preexisting law made it apparent in November, 1987, that a jailer's deliberate indifference to the strong likelihood that a prisoner would attempt suicide was unlawful. *Contra Danese v. Asman*, 875 F.2d 1239 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).[5] I agree that "custodial officials cannot be placed in the position of guaranteeing that inmates will not commit suicide. On the other hand, if such officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Colburn*, 838 F.2d at 669.

Based upon the preceding analysis, defendants' motion for summary judgment on plaintiffs' section 1983 claims will be denied as to defendant Stigers.

### C. Section 1983 Action Against Yale Jarvis And Washington County

■ Plaintiffs allege that defendant County and defendant Sheriff Yale Jarvis failed to properly train and supervise the jail employees on their handling of suicide threats and attempts. "[T]he inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109

---

**5.** The jail suicide in *Danese* occurred in November of 1982. The majority of the cases that I have cited in support of the proposition that the law as it existed in November, 1987, made it apparent that a jailer's deliberate indifference to the strong likelihood that a prisoner would attempt suicide was unlawful, were decided after 1982.

S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Plaintiffs argue that the supervisory defendants' failure to adequately train and supervise constitutes a custom and policy of deliberate indifference to the risk of suicide and suicide attempts at the Washington County Jail. Plaintiffs' Brief In Support Of Resistance to Defendants' Motion For Summary Judgment p. 5.

Plaintiffs, however, have failed to produce legally sufficient evidence which would allow a jury to find the defendant County and defendant Jarvis liable under section 1983. It will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct", *City of Canton*, 109 S.Ct. at 1206, which appears to be the gravamen of plaintiff's claim.

The summary judgment record establishes that the County, through Sheriff Jarvis, had written policies and procedures which required jail personnel to screen all prisoners for possible emergency mental health and substance abuse problems. Defendants' Exhibit 55, pp. 10–11. The County's procedures also required jailers to ensure that all items that the prisoner could use to harm himself were taken from him. Defendants' Exhibit 55, p. 10.

The County had equipped the jail with video and audio equipment to aid in monitoring the cell block area. Additionally, the jail was equipped with emergency alarms which were accessible to the prisoners in the cell block area.

It is undisputed that in 1986 defendant Stigers successfully completed a 40 hour course in jailer training provided by the Iowa State Training School and mandated by Iowa law. The course included a three hour segment which dealt with prisoners who had special medical problems including suicide risks. Plaintiffs' expert Joseph Rowan examined the manual from which the course was taught and he opined in his deposition that he thought the content of the manual was adequate and comprehensive. Rowan Deposition pp. 61–2. In fact, Mr. Rowan teaches basically the same content in his 7 to 8 hour program. Rowan Deposition p. 62. In addition to the State Training School course, defendant Stigers, at the suggestion of his employers, attended a local seminar which discussed the subject of suicides in the community.

Although plaintiffs have evidence that eight other prisoners had previously attempted suicide in the Washington County Jail, they have failed to come forth with sufficient evidence to show that defendant County's alleged failure to train and supervise constitutes a custom or policy of deliberate indifference to the risk of suicide in the Washington County Jail.

Because plaintiffs have failed to meet their burden, defendants' motion for summary judgment will be granted as to defendant County and defendant Jarvis.

## RULING AND ORDER

Based upon the preceding discussion, defendants' motion for summary judgment on plaintiffs' section 1983 claims IS DENIED as to defendant Stigers and IS GRANTED as to the other defendants. Because the section 1983 claims are not dismissed entirely, plaintiffs' pendent state law claims will not be dismissed at this time.

IT IS ORDERED that plaintiffs' section 1983 claims be dismissed as to defendant County, defendant Russell, and defendant Jarvis.