937 F.2d 1340
 Ralph J. BELL, individually and as Conservator and Guardian
for Sam H. Bell and Rose Ann Bell, Appellees,
v.
Francis L. STIGERS, Appellant.
County of Washington County, Iowa; Yale H. Jarvis; Richard
Allison; Alice Benischeck and Eileen Russell.
 No. 90-2203.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 12, 1991.
Decided July 2, 1991.
 
 John Baker, Minneapolis, Minn., argued, for appellant. J. Hobart Darbyshire, Davenport, Iowa, and Clifford M. Greene, Minneapolis, Minn., appeared on appellant's brief.
 John C. Hendricks, Davenport, Iowa, argued for appellees.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Francis Stigers appeals from judgment of the District Court[1] denying his motion for summary judgment. Stigers is a defendant in a 42 U.S.C. Sec. 1983 (1988) action resulting from a detainee's suicide attempt at the Washington County Jail, where Stigers worked as a jailer. For reasons stated below, we reverse the decision of the District Court.
 
 I.
 
 2
 Stigers was on duty at the Washington County Jail on the night of November 6, 1987, when 18-year old Sam H. Bell was arrested for drunk driving. After failing a field sobriety test, Bell was taken into custody and brought to the jail by Officer Jeff Richards of the Washington, Iowa Police Department. A breathalyzer test administered at the jail confirmed that Bell was legally intoxicated. After Richards read Bell his Miranda rights and questioned him, Bell was turned over to Stigers for booking. During this procedure, Stigers performed a pat search on Bell and took possession of his shoes, jacket, pocket knife, and wallet. Stigers did not take Bell's belt, which he had failed to detect in the search. As he filled out the arrest report, Stigers asked Bell whether he had any mental disorders or anything medically wrong with him of which the jailer should be aware. Bell answered in the negative to each question. Stigers then asked Bell if he had been in jail before. Bell replied, "Nope, first time, first time for everything. Well I think I'll shoot myself." "Well sorry we don't have a gun handy," Stigers responded. "Too bad," said Bell. "So you're going to have to live through it like everybody else does," Stigers told Bell concluding the booking procedure. Amended Joint Appendix at 24 (Transcript of Sam Bell Booking Tape). Stigers did not check the suicide box in the security risk section of the Arrest Report, see Amended Joint Appendix at 12 (Arrest Report), because he did not believe Bell's remarks to be a suicide threat. Amended Joint Appendix at 40 (Deposition of Francis L. Stigers).
 
 
 3
 At approximately 11:14 p.m., Stigers placed Bell alone in a cell next to the "bull pen" area from which its two occupants could readily see and talk to Bell through the bars. Stigers conducted two jail checks before his shift ended at midnight. On his final check at 11:46 p.m., he observed Bell sleeping in his cell.
 
 
 4
 Richard Allison replaced Stigers as the jailer on duty. At 12:10 a.m., Allison dispensed medicine to the prisoners but did not recall seeing Bell. At 12:28 a.m., a prisoner in the bull pen area sounded the emergency alarm system after he saw Bell hanging by his belt from the bars of his cell door. The prisoner rang the alarm again a minute later. Allison returned to the cell area, cut Bell down from the cell door, and performed cardiopulmonary resuscitation to restart Bell's heartbeat and breathing. At 12:30 a.m., Allison called for an ambulance to take Bell to a local hospital. As a result of his suicide attempt, Bell suffered permanent brain damage and physical injuries.
 
 
 5
 Bell's parents, Ralph and Rose Ann Bell, on behalf of their son and in their individual capacities, brought this section 1983 action against Washington County and five of its employees.[2] Plaintiffs allege that their son's suicide attempt was caused by defendants' deliberate indifference to his medical and safety needs in violation of the Eighth and Fourteenth Amendments. Their complaint also states pendant claims based on Iowa tort law. Defendants moved for summary judgment on the ground that plaintiffs did not make an adequate showing of deliberate indifference to a strong likelihood of suicide, and thus that plaintiffs had not established a basis for relief under section 1983. Defendants also sought summary judgment on the ground of qualified immunity and asked the court to dismiss the pendant state law claims if summary judgment was granted in their favor.
 
 
 6
 The District Court granted summary judgment in favor of the county, the sheriff, and the communications operator on duty at the jail when the suicide attempt was discovered. Bell v. County of Washington County, Iowa, 741 F.Supp. 1354, 1358, 1360-61 (S.D.Iowa 1990). However, the District Court held that summary judgment was inappropriate with respect to Stigers because "there is a genuine issue of material fact regarding whether Sam made a serious suicide threat which should have alerted defendant Stigers to Sam's suicide risk potential [and t]his issue is best resolved by the jury." 741 F.Supp. at 1359. The court also determined that Stigers was not entitled to the defense of qualified immunity because "preexisting law made it apparent in November, 1987, that a jailer's deliberate indifference to the strong likelihood that a prisoner would attempt suicide was unlawful." 741 F.Supp. at 1360.
 
 
 7
 On appeal, Stigers, who is the only remaining defendant in this action, argues that the District Court erred in concluding there was a genuine issue of material fact as to whether Sam Bell made a serious suicide threat. Stigers also reasserts his argument that he is entitled to qualified immunity.[3]
 
 II.
 A.
 
 8
 Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." White v. Farrier, 849 F.2d 322, 325 (8th Cir.1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Although the defendant seeking summary judgment "has the burden of showing that there is no genuine issue of [material] fact, [this does not relieve the plaintiff of his] own burden of producing in turn evidence that would support a jury verdict." Liberty Lobby, 477 U.S. at 256, 106 S.Ct. at 2514. If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the defendant is entitled to summary judgment. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 B.
 
 9
 A claim under section 1983 must allege that conduct of a defendant acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Although the Supreme Court has not expressly recognized a prisoner's right to be protected from self-inflicted harm, several circuit courts have extended the Eighth Amendment analysis of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), to prisoner suicide cases.[4] Under Estelle, a prisoner's Eighth Amendment rights are violated if his custodians exhibit deliberate indifference to his serious medical needs. Id. at 106, 97 S.Ct. at 292. Medical needs encompass treatment for mental ills as well as aid for the prisoner's physical maladies. "A psychological or psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies." Partridge v. Two Unknown Police Officers, 791 F.2d 1182, 1187 (5th Cir.1986); see also Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir.1991) ("the eighth amendment also protects against deliberate indifference to an inmate's serious mental health and safety needs"). However, a complaint that a jailer was negligent in failing to recognize an inmate's suicidal tendencies does not rise to a valid claim of mistreatment under the Eighth Amendment. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106, 97 S.Ct. at 292. Because inmate suicides are analyzed as the jailer's failure to provide appropriate medical care, "deliberate indifference has become the barometer" by which these claims are tested. Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir.1990). "The deliberate standard is met only if there were a 'strong likelihood, rather than a mere possibility,' that self-infliction of harm would result." Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir.1989) (citing State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir.), cert. denied, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983)).
 
 
 10
 Recently, our own circuit identified deliberate indifference as the governing standard in section 1983 jail suicide cases. Rellergert ex rel. Rellergert v. Cape Girardeau County, Mo., 924 F.2d 794, 796 (8th Cir.1991). Thus, as correctly stated by the District Court, "to prevail under section 1983 for a violation of substantive rights, under either the eighth or fourteenth amendments, plaintiffs must establish that defendant[ ] displayed 'deliberate indifference' to a strong likelihood, rather than a mere possibility that Sam Bell would attempt suicide." 741 F.Supp. at 1358 (citing Edwards, 867 F.2d at 1274-76). Based on our review of the record, we conclude that the plaintiffs have not made a showing sufficient to establish that Stigers was deliberately indifferent to a strong likelihood that Sam Bell would attempt suicide.
 
 
 11
 We are guided by the reasoning of Rellergert:
 
 
 12
 Generally, the deliberate indifference issue in inmate suicide cases arises under one of two broad fact situations. First is a suicide or attempt that occurs when jailers fail to discover the decedent's suicidal tendencies. Second is a suicide or attempt that occurs when jailers have discovered the tendencies and have taken preventative measures. The legal inquiry is the same in both sets of cases: whether the jailers were deliberately indifferent to the risk of suicide.
 
 
 13
 924 F.2d at 796 (footnotes omitted). Unlike Rellergert, this case falls within the first scenario. Thus, the inquiry becomes whether Stigers knew or should have known there was a strong likelihood that Bell would attempt to take his own life. "[A]n allegation of deliberate indifference must be considered in light of the level of knowledge possessed by officials involved, or that which should have been known as to an inmate's suicidal tendencies." Popham, 908 F.2d at 1564.
 
 
 14
 The facts of this case show conclusively that Stigers did not possess the level of knowledge that would alert him to a strong likelihood that Bell would attempt suicide. Prior to Bell's attempted suicide on November 7, 1987, no information was available that would have made anyone aware of his suicidal tendencies. He had never threatened or attempted suicide. He had never received psychiatric or psychological counseling. He had never given his parents any indication that he was contemplating suicide. Amended Joint Appendix at 10 (Stipulated Statement of Facts). Moreover, based on the information Stigers garnered during his sole encounter with Bell, Stigers had no reason to know or even to suspect that Bell was a potential suicide risk. Unlike the detainee in Partridge v. Two Unknown Police Officers, 791 F.2d 1182 (5th Cir.1986) (reversing dismissal of section 1983 claim against city and police department based on detention center's deliberate lack of adequate care for detainees), Bell did not display agitated or hysterical behavior nor had he ever suffered a nervous breakdown. Unlike the inmate in Colburn v. Upper Darby Township, 838 F.2d 663 (3rd Cir.1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989) (reversing dismissal of section 1983 claim against custodial official alleging that defendant knew or should have known detainee was a suicide risk), Bell had not attempted suicide in a jailer's presence the day before his arrest, he did not come to the jail equipped to carry out his self-destructive mission with a handful of Valium and a round of ammunition, nor did he display any tell-tale scars on his wrist. Similar to the facts in Edwards (officers entitled to summary judgment because their conduct did not constitute deliberate indifference to inmate who had not previously attempted or threatened suicide), before Bell attempted to take his life on November 7, 1987, "there was no mention by [him] or anyone else of suicidal tendencies. Also, there was no evidence of unusual behavior." 867 F.2d at 1275.
 
 
 15
 The District Court, however, held that summary judgment was precluded because the plaintiffs had generated at least two jury questions regarding Stigers' alleged deliberate indifference to the strong likelihood that Bell would attempt suicide. 741 F.Supp. at 1359. The first genuine issue of material fact found by the court is based on Bell's "suicide threat." The court concluded that the jury should decide whether Bell's remark about shooting himself was a sufficiently serious threat to alert Stigers to Bell's suicide risk potential. We disagree. A single off-hand comment about shooting oneself when no gun is available cannot reasonably constitute a serious suicide threat. Bell's remark simply does not rise to a display of suicidal tendencies. Moreover, even if a listener more sensitive than Stigers might have taken the remark seriously, Stigers' failure to interpret it as a genuine manifestation of a suicide threat would at most constitute negligence, not deliberate indifference.
 
 
 16
 The second jury question recognized by the court was "whether Sam fit the prisoner 'suicide profile,' which may be relevant to the 'likelihood' of Sam's suicide attempt." 741 F.Supp. at 1359. Again, we disagree. Although information contained in a suicide profile may assist jailers in recognizing suicide risks, such information without more cannot reasonably support the existence of a strong likelihood that a particular prisoner will attempt suicide. Here, there is neither any evidence that Stigers was familiar with the "suicide profile," nor was he under any duty to be familiar with such a profile. As stated by the Eleventh Circuit in rejecting suicide profile evidence, "[t]he law does not require jail officials to keep up with the latest literature in the social sciences." Edwards, 867 F.2d at 1276. We agree with that statement of the law.
 
 
 17
 "Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide [does not] constitute deliberate indifference." Popham, 908 F.2d at 1564. Because Stigers was not aware that Bell was a suicide risk, his failure to detect or remove Bell's belt does not rise to the level of deliberate indifference. See Francis v. Pike County, 708 F.Supp. 170, 172 (S.D.Ohio 1988), aff'd, 875 F.2d 863 (6th Cir.1989) (summary judgment for jailer who failed to remove inmate's belt; no evidence to establish that he should have known that inmate was contemplating suicide). While Stigers' omission may well be characterized as negligent, his conduct does not support a finding of deliberate indifference. In a section 1983 action, mere negligence does not support a claim of deprivation of rights under either the Eighth Amendment, Estelle, 429 U.S. at 105-07, 97 S.Ct. at 291-92, or the Fourteenth Amendment, Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Because plaintiffs have not come forward with evidence sufficient to establish that Stigers possessed the level of knowledge required under the deliberate indifference standard, we conclude that the District Court erred in denying Stigers' motion for summary judgment.
 
 III.
 
 18
 As we conclude that Stigers is entitled to summary judgment on the ground discussed in part II of this opinion, it is unnecessary for us to address the issue of qualified immunity. The District Court's denial of Stigers' motion for summary judgment is reversed. The court is directed to enter summary judgment in Stigers' favor and to dismiss plaintiffs' section 1983 claim against him with prejudice.
 
 
 19
 HEANEY, Senior Circuit Judge, dissenting.
 
 
 20
 I would affirm the district court for the reasons stated in its opinion. Although this court characterizes Bell's suicide threat as a single off-hand comment about shooting himself when no gun was available, see ante at 1344, this characterization ignores findings the district court made after listening to a tape of the entire booking interview. Chief Judge Vietor found that there was a "consistent note of despondency throughout the lengthy interview" and that Bell's answers suggested "a feeling of despondency." Bell v. County of Washington County, Iowa, 741 F.Supp. 1354, 1359 (S.D.Iowa 1990). As this court suggests, an inmate's "agitated or hysterical behavior" gives a jailer reason to suspect suicidal tendencies. See ante at 1344. Likewise, an inmate's despondent behavior puts a jailer on notice that the inmate has suicidal tendencies, particularly when coupled with a suicide threat. There was enough evidence in the record to support the allegation that Bell made a serious suicide threat and that Stigers had reason to know that Bell was a potential suicide risk.
 
 
 21
 I would affirm the district court for another important reason. Washington County Jail regulations provide that jailers must remove the belt of any person brought into jail in a drunken condition. There is ample evidence here from which a jury could find that jailer Stigers was aware of the rule, that Bell was intoxicated, and that Bell was wearing a belt. Indeed, the record reveals that the police officer who arrested Bell detected Bell's belt, so the belt could not have been hard to discover. A jury thus could find that jailer Stigers did a pat-down search of Bell, that he either became aware of the presence of the belt, or that his failure to discover the belt resulted from his deliberate indifference.
 
 
 22
 Given this, the jailer's statement that he did not believe Bell's suicide threat to be serious is not controlling. The jail authorities had established a clear policy that jailers remove belts worn by intoxicated persons. This policy was designed to thwart suicides, and Stigers had an obligation to carry out the policy. Bell's stated intention to kill himself only served to emphasize the importance of following the rule. Accordingly, a jury could well disbelieve Stigers' testimony that he knew nothing about the belt Bell was wearing and knew nothing about Bell's suicidal tendencies, and could find that Stigers was deliberately indifferent to the risk of suicide. For the reasons stated above I dissent.
 
 
 
 [1]
 The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa
 
 
 [2]
 Claims against two of the county employees originally named as defendants in the complaint were dismissed pursuant to stipulation of the parties. Bell v. County of Washington County, Iowa, 741 F.Supp. 1354, 1357-58 n. 3 (S.D.Iowa 1990)
 
 
 [3]
 The denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is immediately appealable as a " 'final decision' within the meaning of 28 U.S.C. Sec. 1291." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)
 
 
 [4]
 We note that protection against cruel and unusual punishment as provided under the Eighth Amendment applies only to convicted prisoners. Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977)). However, as stated by the Supreme Court, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Therefore, whether jail suicides involving detainees are analyzed under indirect application of the Eighth Amendment via the Fourteenth Amendment or under the direct application of the Due Process Clause of the Fourteenth Amendment, see Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985), the governing standard is the same. In the case of a pretrial detainee who committed suicide, "[t]he conduct for which liability attaches ... must demonstrate deliberateness tantamount to an intent to punish." Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir.1988) (citation omitted), cert. denied, 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989)