769 F.Supp. 317 (1991)
Amanda F. CHRISTIAN, a minor, By and Through her next friend, Nancy JETT, and Lula M. Moore, Plaintiffs,
v.
John STANCZAK, Tina Proctor, and Marion DeMoulin, Defendants.
No. 90-0739-C-5.
United States District Court, E.D. Missouri, E.D.
July 31, 1991.
*318 Michael A. Campbell, Sestric, Korum & Weems, Clayton, Mo., for plaintiffs.
Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for Stanczak and Proctor.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiffs filed a six count complaint against defendants alleging that defendants are liable for the suicide death of Sammy Joe Christian while Sammy Joe was incarcerated in a holdover cell at the City of Florissant Police Department. In Counts I, III, and V plaintiffs allege that defendants are liable under 42 U.S.C. § 1983 for violations of Sammy Joe's eighth and fourteenth amendment rights. In Counts II, IV, and VI plaintiffs allege that defendants are liable for common law negligence. This cause is before the Court on motions of defendants John Stanczak and Tina Proctor for summary judgment.[1]
Courts have repeatedly recognized that summary judgment is a harsh remedy which should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Electric Cooperative Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the *319 moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, supra, 838 F.2d at 273. Once the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that can logically be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
Plaintiff Amanda Christian is the daughter of Sammy Joe Christian. Nancy Jett is the mother of Amanda and serves as Amanda's next friend in this lawsuit. Plaintiff Lula Moore is the mother of Sammy Joe Christian. Defendant John Stanczak is a police officer employed by the City of Florissant. Defendant Tina Proctor is a dispatcher employed by the City of Florissant.
Nancy described the following events that occurred on February 14, 1989, the day that ended with Sammy Joe's suicide. Sammy Joe spent the afternoon of February 14, 1989 with Nancy and Amanda at the house of Nancy's parents. Sammy Joe was prone to abusive, violent behavior when he was intoxicated. Nancy suspected that Sammy Joe had been drinking alcohol before he visited her that day. While Nancy was in the kitchen feeding Amanda, Sammy Joe entered the room, pushed Nancy up against a counter, and choked her with his hands. Sammy Joe released Nancy and left the room. Nancy took Amanda to her room and held Amanda on her lap.[2]
Sammy Joe located a gun that belonged to Nancy's stepfather. Sammy Joe entered the room occupied by Nancy and Amanda, pointed the gun at Nancy and threatened to shoot her with it. Sammy Joe declined to carry out his threat for fear of hurting Amanda. Sammy Joe dropped the gun near Nancy and left the room.[3] Shortly thereafter, Sammy Joe retrieved the gun from Amanda's bedroom and entered the kitchen. Although Nancy could not see Sammy Joe inside the kitchen, she heard a clicking noise. She also heard Sammy Joe say something like, "If only I had the guts...." Nancy inferred that Sammy Joe meant, "If only I had the guts, I would shoot myself with this gun."[4] Nancy's inference was derived from a statement by Sammy Joe in January, 1988 that he would shoot himself if he had a gun.[5]
Sammy Joe left the house and returned about twenty minutes later. After returning *320 to the house Sammy Joe told Nancy that he wanted her to drive him to Clayton, Missouri so that he could pay a fine. Nancy agreed because she feared that Sammy Joe would harm her if she refused. On the way to Clayton Sammy Joe changed his mind and wanted Nancy to drive him to his sister's house in Alton, Illinois. Nancy initially agreed but changed her mind en route to Alton because she was concerned for her safety. Nancy pulled into a gas station and informed Sammy Joe that she would not drive him to Alton. Sammy Joe grabbed her and hit her in the jaw.
Nancy escaped from the car and called to the gas station attendant for help. The gas station attendant called 9-1-1 and requested the assistance of a police officer. Sammy Joe initially tried to drive Nancy's car away from the station. For an unknown reason, Sammy Joe abandoned the car, walked away from the station, and boarded a bus. After Sammy Joe left, defendant John Stanczak of the City of Florissant Police Department arrived. Upon Stanczak's arrival Nancy informed him of the day's events. Specifically, Nancy told Stanczak that Sammy Joe had been drinking and was acting irrationally, had choked her and pointed a gun at her, had hit her, and had sat in the kitchen with a gun and made a reference to suicide.[6] Nancy warned Stanczak that Sammy Joe might still have the gun in his possession.
Stanczak learned from the gas station attendant that Sammy Joe had boarded a bus. Stanczak stopped the bus and removed Sammy from it. Stanczak took Sammy Joe back to the gas station. On the way to the gas station Stanczak retrieved two duffle bags that Sammy Joe had dropped in front of the station. The duffle bags contained empty beer and wine bottles. Stanczak asked Nancy whether she wanted to press charges against Sammy Joe for assault. Nancy does not recall her response, but remembers that she informed Stanczak there was an outstanding warrant for his arrest.[7] Stanczak arrested Sammy Joe and took him to the City of Florissant Police Department.
The Florissant Police Department has three shifts: 7:00 a.m.  3:00 p.m., 3:00 p.m.  11:00 p.m., and 11:00 p.m.  7:00 a.m. Stanczak and Sammy Joe arrived at the Florissant Police Department at approximately 6:30 p.m. The following employees were on duty at the time of their arrival. Robert DeMoulin, a sergeant with the Florissant Police Department, was the watch commander on duty. Bo Thomas was the identification officer. John Harmon and Steve Rainey were the dispatchers. Upon arrival at the Florissant Police Department, Stanczak prepared a record of arrest, or booking sheet, and an arrest report. Stanczak did not tell Bo Thomas or indicate on either form that Sammy Joe was a suicide risk. Bo removed Sammy Joe's personal objects, issued Sammy Joe a jumpsuit, and placed him in holdover cell # 4.
On February 14, 1989 the following policies concerning the holdover cells were in effect at the Florissant Police Department. It was the responsibility of the dispatchers to monitor the activity inside the holdover cells with closed circuit cameras pointed inside the cells.[8] The dispatcher was instructed to turn on the camera when notified that a prisoner was placed in the holdover cell, and then monitor the activity within the cell "from time to time" and alert the supervisor of any unusual activity. The identification officer was responsible for feeding the prisoners and making period checks of the holdover area to assure that the prisoner's needs were satisfied. The watch commander was responsible *321 for inspecting the holdover area once at the beginning of his shift and once prior to going off duty. The watch commander was also responsible for the work of the dispatchers.
On February 14, 1989 at 11:00 p.m. Tina Proctor relieved John Harmon as a dispatcher and Marion DeMoulin relieved Robert DeMoulin as shift commander. At some time between 10:00 p.m. and 11:15 p.m. Sammy Joe hanged himself by removing his jumpsuit, fashioning a noose with it, and strangling himself by attaching the noose to a horizontal bar. Sammy Joe was discovered by Bo Thomas at approximately 11:15 p.m. when Bo entered the holdover area in order to release Sammy Joe into the custody of a St. Louis County police officer. When Bo saw Sammy Joe hanging, he immediately called for an ambulance and a supervisor. Because it appeared to Bo and other officers that Sammy Joe was already dead at 11:15 p.m., Sammy Joe was left hanging until a medical examiner arrived. Sammy Joe was pronounced dead at approximately 11:30 p.m.
Dispatcher John Harmon and watch commander Robert DeMoulin were suspended for neglect of duty after the suicide of Sammy Joe Christian. John Harmon did not turn on the camera in Sammy Joe's holding cell at any time during Sammy Joe's incarceration. Therefore, John Harmon violated policy by not monitoring the activities of a prisoner in the holding cell. Robert DeMoulin was disciplined for not assuring that the dispatchers properly turned on the camera in Sammy Joe's cell and monitored his activity.[9] Defendant Tina Proctor was not disciplined because she came on duty at 11:00 p.m. and it is likely that Sammy Joe had already hanged himself by that time. Although Bo Thomas was not disciplined, Robert Lowery, Sr., the Florissant Chief of Police, admitted in his deposition that his failure to discipline Bo may have been an oversight. Defendant John Stanczak was also not disciplined.

The Legal Standard
A claim under section 1983 must allege that conduct of a defendant acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Plaintiffs allege that defendants violated the eighth and fourteenth amendment rights of decedent by failing to protect him from self-inflicted harm.[10] In Rellergert ex rel. Rellergert v. Cape Girardeau County, Mo., 924 F.2d 794, 796 (8th Cir.1991), the Eighth Circuit Court of Appeals extended the deliberate indifference analysis of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), to section 1983 jail suicide cases. To prevail under section 1983 for a violation of either the eighth or fourteenth amendments, plaintiffs must establish that defendants displayed deliberate indifference to a strong likelihood, rather than a mere possibility, that the prisoner would attempt suicide. Bell v. Stigers, supra.
In the instant matter it is clear that neither defendant John Stanczak nor defendant Tina Proctor displayed deliberate indifference to a strong likelihood that Sammy Joe would attempt suicide.

John Stanczak
Plaintiffs allege that defendant John Stanczak, as the arresting officer, displayed deliberate indifference when he failed to designate Sammy Joe as a suicide risk. First, Nancy informed Stanczak that *322 Sammy Joe made the statement, "If only I had the guts...." Nancy interpreted that statement to be a reference to suicide. Nancy also informed Stanczak that Sammy Joe had been drinking alcohol and was intoxicated, and had assaulted her on several occasions. Nancy's warnings concerning Sammy Joe's reference to suicide, his state of intoxication, and his abusive behavior are insufficient to apprise Stanczak of Sammy Joe's suicidal tendencies. In Bell v. Stigers, supra, the prisoner had been arrested for drunk driving. A breathalyzer test administered at the jail confirmed that the prisoner was legally intoxicated. During the booking process the prisoner made a comment about shooting himself, though it was apparent that the prisoner did not have access to a gun. The jailer disregarded the comment, and did not designate the prisoner a suicide risk. After midnight the prisoner attempted suicide by hanging himself with his belt. The Eighth Circuit stated: "A single off-hand comment about shooting oneself when no gun is available cannot reasonably constitute a serious suicide threat. [The prisoner's] remark simply does not rise to a display of suicidal tendencies."
In the instant matter Stanczak was told that Sammy Joe had made a vague reference to suicide. The report of the vague reference was not accompanied by any history of suicide attempts or suicidal ideation. Although a history of self-abuse should alert a police officer to a suicide threat, Nancy reported to Stanczak that Sammy Joe choked, hit, and pointed a gun at her. Stanczak was not required to make a connection between Sammy Joe's demonstrated propensity to harm Nancy and Sammy Joe's propensity to harm himself.
Furthermore, the circumstances of Sammy Joe's arrest did not suggest to Stanczak that Sammy Joe would harm himself. Although Sammy Joe was legally intoxicated, he did not stagger or sway. Sammy Joe did not resist arrest, or act irrationally or violently while in custody. Finally, Sammy Joe did not make any suicide threats to Stanczak or within the hearing of Stanczak.
For the foregoing reasons, the Court concludes that defendant Stanczak did not display deliberate indifference to Sammy Joe's psychological needs when he failed to designate Sammy Joe as a suicide risk.

Tina Proctor
Tina Proctor came on duty as a dispatcher at 11:00 p.m. If the Court assumes that Sammy Joe hanged himself between 10:00 p.m. and 11:15 p.m., it is likely that Sammy Joe was already dead by the time that Tina Proctor entered the City of Florissant Police Department. If Tina Proctor was not on duty at the time of the hanging, she certainly cannot be liable for deliberate indifference in her failure to prevent it.
Tina Proctor, however, cannot be held liable for deliberate indifference even if she came on duty before Sammy Joe hanged himself. Tina Proctor should have turned on the camera in holdover cell # 4 at the beginning of her shift.[11] If the camera in holdover cell # 4 was turned on, it is possible that Tina Proctor would have noticed Sammy Joe's suspicious behavior and notified her supervisor. While Tina Proctor's failure to turn on the camera may constitute negligence on her part, it certainly does not rise to the level of deliberate indifference.
For the foregoing reasons, the Court enters summary judgment in favor of defendant John Stanczak and in favor of defendant Tina Proctor on the merits of plaintiffs' amended complaint.
NOTES
[1] On November 6, 1990 Marion DeMoulin was dismissed as a defendant in this action because plaintiffs failed to obtain service on him. The dismissal of Marion DeMoulin was, in effect, a dismissal of Count V and Count VI of plaintiffs' amended complaint.
[2] Sammy Joe assaulted Nancy on several previous occasions. Nancy attributed Sammy Joe's violent behavior to his drinking.
[3] The Court wonders why Nancy did not hide the gun with which Sammy Joe had just threatened her. If Sammy Joe was acting as "irrationally" as Nancy suggests, Nancy should have feared that Sammy Joe would pick up that gun at any time and shoot her and her daughter with it.
[4] Another reasonable interpretation of Sammy Joe's statement is, "If only I had the guts, I would shoot Nancy with this gun." Sammy Joe's hostility appears to have been directed at Nancy, and not himself, on the afternoon of February 14, 1989.
[5] The January, 1988 statement of Sammy Joe was his only previous reference to suicide made in the presence of Nancy. Plaintiff Lula Moore testified in her deposition that Sammy Joe never made a reference to suicide in her presence.
[6] Nancy complained to the gas station attendant that she felt very ill and might black out. Although the Court doubts that Nancy could recall what she specifically told Stanczak while in this frazzled mental state, the Court will assume for purposes of this motion for summary judgment that Nancy informed Stanczak about Sammy Joe's reference to suicide while in the kitchen. There is no suggestion, however, that Nancy informed Stanczak about Sammy Joe's previous suicide threat in January, 1988.
[7] Sammy Joe was previously charged with driving while intoxicated and failed to appear.
[8] The dispatchers are not permitted inside the holdover area.
[9] After Sammy Joe's suicide the policy at the Florissant Police Department was changed to require that the cameras inside the holdover cells remain on at all times.
[10] Protection against cruel and unusual punishment as provided under the eighth amendment applies only to convicted prisoners. Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-07, 51 L.Ed.2d 711 (1977)). At the time of Sammy Joe's suicide death, he was not convicted of any crime. However, the governing standard is the same whether the suicide is committed by a convicted prisoner or a pretrial detainee. Bell v. Stigers, 937 F.2d 1340 (8th Cir.1991).
[11] Although Tina Proctor was not on duty when Sammy Joe was incarcerated in holdover cell # 4, Tina Proctor would have discovered that a prisoner was in holdover cell # 4 by checking the booking sheets in the communications area.