B. Randolph BOYD, Administrator of
the Estate of Thomas A.
Young, Plaintiff,

v.

Joseph HARPER, Jr., Defendant.

Civ. A. No. 88–0340–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 22, 1988.

Douglas Foord, Fairfax, Va., Steven W. MacDonald, Ventura & MacDonald, P.C., Braintree, Mass., Richard T. Tomar, Philipson, Mallios & Tomar, Washington, D.C., for plaintiff.

Charles F. Witthoefft, Michael P. Falzone, Dana B. Sykes, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the Defendant's motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on all claims and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, and on the Plaintiff's oral motion for leave to dis-

miss voluntarily his state law wrongful death claim.

FACTS

Plaintiff Boyd is the administrator of the estate of Thomas A. Young. On May 20, 1986, Mr. Young was arrested and committed to the Petersburg Correctional Center ("Jail"). After Mr. Young was arrested and brought to the jail, Deputy Warren C. Felton took from him, among other things, his belt, his knife, and a pen. He was then placed in a lock-up area, where he passed the night without incident.

The next morning, Mr. Young underwent both a "classification" interview and a medical interview. He was cooperative and friendly for both. In the classification interview, Mr. Young was requested to give basic personal data (date of birth, marital status, etc.) as well as to state whether or not he was an alcohol or drug abuser, whether or not he was on medication, and whether he had any medical problems. In this interview, Mr. Young requested to remain in the lock-up rather than being admitted to the general prison population. He then underwent a general medical interview. Both interviewers report in their affidavits that Mr. Young was cooperative and did not show any signs of suicidal tendencies. Affidavits of Deputy Branch, Deputy Vaughn, and Lieutenant Dolinger, Defendant's Exhibits 2, 3 & 4. Following his interviews, Mr. Young was issued jail clothing and a "personal hygiene kit." The plaintiff points out that this kit included a safety razor, in spite of the fact that Mr. Young had a full beard.

Routine security checks are made of all cell blocks in the prison every hour on an irregular basis. Deputy Eugene Chandler checked the area at 1:00 and all was well. On another check at 1:12, Deputy Wilbert Davis discovered Mr. Young hanging by a sheet from the bars of his cell. Mr. Young had also attempted to slit his wrists with the razor supplied as part of his hygiene kit. Attempts to revive him failed, and he was declared dead at the Petersburg General Hospital. The cause of death, as determined in the Final Autopsy Report of the Office of the Chief Medical Examiner for the Commonwealth, was asphyxia by hanging. That report also stated that the wrist incisions were "superficial." Exhibit L to Affidavit of Harold U. Evans, Defendant's Exhibit 1.

Mr. Boyd is suing Sheriff Joseph Harper, in the latter's capacity as administrator of the Petersburg Correctional Center, under 42 U.S.C. § 1983, charging violation of Mr. Young's Fourteenth Amendment rights. The plaintiff alleges, in particular, that Sheriff Harper was grossly negligent in failing to supervise his employees, failing to implement and enforce procedures to prevent such suicides, providing Mr. Young with a dangerous instrument, failing to supervise his use thereof, failing to monitor Mr. Young, and ignoring warnings of other prisoners that Mr. Young was a suicidal risk. Boyd's complaint also includes a pendant state law wrongful death claim.

DISCUSSION

The starting point for our analysis is the Supreme Court's holding in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), that "the Due Process Clause is simply not implicated by a *negligent* act of an official." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). This is so because "Section 1983 should not be construed to create a ' "font of tort law to be superimposed upon whatever systems may already be administered by the States." ' " *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983), quoting *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (overruled on other grounds, *Daniels*, 474 U.S. at 330, 106 S.Ct. at 664), quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed. 2d 405 (1976). The plaintiff in a § 1983 cause of action based on the Fourteenth Amendment must prove that the defendant was more than merely negligent.

■ Although *Daniels* held that mere negligence was insufficient to constitute a cause of action under § 1983, that case explicitly declined to rule on whether recklessness or gross negligence would be sufficient. *Id.*, 474 U.S. at 334 n. 3, 106 S.Ct.

at 667 n. 3. It is therefore necessary to decide to what standard we will hold the behavior of a jail official under the Fourteenth Amendment in the context of the suicide of a pretrial detainee.

Although no standard has yet been established under the Fourteenth Amendment, an analogous standard is available under the Eighth Amendment. Under that Amendment, a convicted prisoner charging that a prison official has denied him adequate medical treatment must prove that the official was "deliberate[ly] indifferen[t] to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Eighth Amendment's protection against cruel and unusual punishment applies only to prisoners incarcerated after a criminal conviction. *Whitley v. Albers,* 475 U.S. 312, 318–19, 106 S.Ct. 1078, 1083–84, 89 L.Ed.2d 251 (1986); *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1409, 51 L.Ed.2d 711 (1977). The Fourth Circuit has specifically held, however, that *Estelle*'s "deliberate indifference" standard applies to the denial of medical care to a pretrial detainee. *Whisenant v. Yuam,* 739 F.2d 160, 164 (4th Cir.1984).

It is proper to consider the prison suicide cases in light of the standards set for denial of medical attention. It is true that "a prison custodian is not the guarantor of a prisoner's safety," *Freedman v. City of Allentown,* 853 F.2d 1111, 1115 (3d Cir. 1988) and that a prisoner determined to take his or her life will probably find a way to do so, even in the face of the most exhaustive precautions. It is, however, also true that a suicidal prisoner is one in need of psychiatric care, a need to which prison custodians may not, under the *Estelle* standard, be deliberately indifferent. *Bowring v. Godwin,* 551 F.2d 44 (4th Cir. 1977). At least three circuits have explicitly held that the behavior of prison officials in the context of prison suicide should be examined in light of a deliberate indifference standard. *Colburn v. Upper Darby Township,* 838 F.2d 663, 668–69 (3d Cir. 1988); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986); *Roberts v. City of Troy,* 773 F.2d 720, 725

(6th Cir.1985). We therefore hold that in order for the suicide of a prisoner or pretrial detainee to form the basis for a § 1983 cause of action against a custodial official, it is necessary to prove that the official was deliberately indifferent to the suicidal state of the prisoner or detainee.

■ This deliberate indifference may be manifested in one of three ways. In order to sustain a § 1983 cause of action, the plaintiff must prove: (1) that the defendant knew about the suicidal tendencies and was deliberately indifferent to the prisoner's or detainee's condition in light of such knowledge; (2) that the defendant was deliberately indifferent to discovering any potential suicidal tendency on the part of the prisoner or detainee; or (3) that the defendant's conduct can be considered deliberately indifferent to the possibility of suicide even with no specific knowledge of the prisoner's or detainee's condition. In his Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the plaintiff in this case attempts to raise issues of material fact with respect to each of those categories of deliberate indifference. In no case does he succeed.

■ The plaintiff alleges the following as examples of deliberate indifference: that Jail officials failed to act in spite of the fact that they had been informed by another inmate that the inmate had heard Mr. Young "weeping" shortly before his suicide; that the official in charge of the classification interview had not received "basic jail training;" and that Jail officials gave Mr. Young a safety razor as a part of his "hygiene kit." In addition, the plaintiff contends that the expert opinion of Lindsay M. Hayes on the suicide situation at the Petersburg Jail raises an issue of material fact. Each of these contentions will be addressed in turn, in each case construing the facts in the manner most favorable to the plaintiff. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

The plaintiff contends that the jail officials knew of Mr. Young's suicidal tendencies, and failed to act on such knowledge. The plaintiff offers, as evidence in support

of his contention that the jail officials knew of Mr. Young's suicidal tendencies, an uncertified photocopy of a note supposedly written by Captain Harold U. Evans after Mr. Young's death. The note states, in its entirety:

Note: On return from hospital found letter Mr. Young had written to his wife.

Spoke with inmates in same cell block as Mr. Young. One of the inmates mentioned he had heard Mr. Young weeping a short time before incident happened. I ask him why he had not brought this to someone's attention? He advised me he had told someone. I ask him who he had told and he said he couldn't remember.

All shift officers indicated nothing unusual was noted with Mr. Young during security rounds.

Plaintiff's Memorandum in Opposition, Exhibit A. As evidence opposing a motion for summary judgment, this note falls short of the requirement in Rule 56(e) that such a copy be "[s]worn or certified." Furthermore, were the plaintiff to seek to admit this note into evidence at trial, he would likely encounter serious hearsay problems. Even were the Court to disregard the procedural flaws of this note, however, its contents would not serve to generate an issue of material fact under the deliberate indifference standard. Compare, for example, the knowledge Mr. Young's guards allegedly had—from another inmate, of Mr. Young's weeping—with the direct knowledge of the guards in *Freedman*, 853 F.2d at 1113, of long scars on the prisoner's wrists, elbows, and neck. Despite allegations to this effect, however, the Third Circuit affirmed the dismissal of the complaint in that case. That Court did not explicitly rely on the deliberate indifference standard because it found that the behavior of the prison officials in failing to react to the detainee's scars was "at most negligence," *id.* at 1116, and that the claim was, therefore, barred by *Daniels*.

In contrast, both *Colburn* and *Partridge*—affirming district court decisions denying motions to dismiss—alleged facts far more serious than those that have emerged following the extensive discovery that has occurred in the present case. The

prisoner in *Partridge* became hysterical upon arrest, and was violent and self-destructive on the way to the police station. Furthermore, there were records at the station that were not seen by the arresting officers that the prisoner had once before attempted suicide in jail. The detaining officer in *Colburn* had already had to prevent the detainee from swallowing an overdose of Valium, and prison officials failed to find a hand gun concealed on her person, with which she later killed herself. In the three cases upon which the plaintiff relies in his opposition, the prisoner had either previously attempted suicide while in custody, *Guglielmoni v. Alexander*, 583 F.Supp. 821 (D.Conn.1984), or had explicitly informed prison officials of his or her intention to commit suicide. *Danese v. Asman*, 670 F.Supp. 709 (E.D.Mich 1987), *Matje v. Leis*, 571 F.Supp. 918 (S.D.Ohio 1983).

Deliberate indifference exists "when action is not taken in the face of 'a strong likelihood, rather than a mere possibility' that failure to provide care would result in harm to the prisoner." *Matje*, 571 F.Supp. at 930, quoting *Camic*, 712 F.2d at 1146. Even assuming, however, that Mr. Young's jailers knew that Mr. Young was "weeping," such knowledge does not indicate a "strong likelihood" of suicide. They would therefore not have been deliberately indifferent in failing to act in the face of such knowledge.

The plaintiffs next contend that the official who conducted the classification interview, Deputy J.E. Branch, had not received proper training. This is essentially an allegation that, in failing to train his subordinates, Sheriff Harper was deliberately indifferent to discovering any potential suicidal tendency on the part of pretrial detainees. *Freedman*, however, states that even "allegations ... that the defendants deliberately elected not to train are not enough to support a constitutional claim." *Id.* at 1117. Instead, the plaintiff must show " 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have

582

communicated a message of approval to the offending subordinate.'" *Id.*, quoting *Colburn*, 838 F.2d at 673. The plaintiff in this case has not attempted to show either knowledge on the part of Deputy Branch, nor approval on the part of Sheriff Harper. The failure to train Deputy Branch constitutes "at most negligence" on the part of the Jail and Sheriff Harper, and therefore, under *Daniels*, is not actionable under § 1983.

▇ The plaintiff's claim that Jail officials should be held liable for providing Mr. Young with a safety razor is an attempt to show that the officials' conduct was deliberately indifferent to the possibility of suicide, even with no specific knowledge of the prisoner's or detainee's condition. Because the injuries to Mr. Young's wrists inflicted with the safety razor were not the cause of his death, however, Mr. Young's estate is not entitled to collect on that claim. *Carey v. Piphus*, 435 U.S. 247, 260–61, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978); *see also Wood v. Strickland*, 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). The *Carey* Court explicitly rejected the argument that plaintiffs in a § 1983 case should be compensated—even if they fail to prove that the alleged violation actually caused injury—for " 'the injury which is "inherent in the nature of the wrong."'" *Id.*, quoting *Piphus v. Carey*, 545 F.2d 30, 31 (7th Cir.1976). Once there is demonstrated to have been no causal connection between the alleged constitutional violation and the injury suffered, no recovery may be had for that alleged violation.

Finally, the expert opinion of Mr. Hayes cannot serve to generate a genuine issue of material fact. In his conclusion, Mr. Hayes states that "Thomas Young's suicide was not only foreseeable, but preventable." These are the hallmarks of a common law tort action, but do not rise to the level of "deliberate indifference."

In conclusion, the plaintiff in this case has failed to produce evidence of conduct that was more than "merely negligent" on the part of the staff of the Petersburg Correctional Center or of Sheriff Harper.

The plaintiff has, therefore, failed to raise a genuine issue of material fact with respect to his § 1983 cause of action. Summary judgment with respect to that cause of action is GRANTED, and the claim is DISMISSED with prejudice. The plaintiff's motion for leave to dismiss voluntarily his state law wrongful death claim is hereby GRANTED, and the defendant's motion for summary judgment with respect to this claim is therefore moot. Finally, the Defendant's motion for sanctions was dealt with in a manner that appears more fully in the record.

It is so ORDERED.