908 F.2d 1561
 Kathy Roberts POPHAM, As Administratrix of the Estate of
Robert Popham, Plaintiff-Appellant,
v.
CITY OF TALLADEGA, Police Chief, Mike Hamlin, in his
individual and official capacity, Police Officer, Randy
Jones, in his individual and official capacity, Police
Officer, Mark Williams, in his individual and official
capacity, and Mayor, George Montgomery, in his individual
and official capacity, Councilman, Robert Duncan, in his
individual and official capacity, Councilwoman, Edith Sims,
in her individual and official capacity, Councilman, Charles
Miller, in his individual and official capacity, Councilman,
James Braswell, in his individual and official capacity and
Councilman, Ken Payne, in his individual and official
capacity, Defendants-Appellees.
 No. 89-7499.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 20, 1990.
 
 Robert L. Wiggins, Jr. and Ann R. Norton, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for plaintiff-appellant.
 David A. Lee and Mark W. Lee, Parsons, Lee & Juliano, P.C., Birmingham, Ala., for Hamlin, Jones, Williams, Montgomery, Duncan, Sims, Miller, Braswell and Payne.
 E. Martin Bloom and William Anthony Davis, III, Starnes & Atchison, Birmingham, Ala., for City of Talladega.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH, Circuit Judge, RONEY* and ALDISERT**, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal from a grant of summary judgment for the defendants arises out of a Christmas Eve jail suicide. Kathy Popham, widow of the decedent, filed a 42 U.S.C.A. Sec. 1983 action against the City of Talladega and various of its officials,[1] claiming due process violations and state law relief under the wrongful death statutes of the State of Alabama.
 
 
 2
 The district court held for the defendants, finding first, that there was no official policy or custom to support an official capacity claim against the City and the individual city employees, and second, that the defendants did not show "deliberate indifference" to the needs of the prisoner, and are entitled to qualified immunity in their individual capacities. The district court filed an extensive well-reasoned opinion dealing with every argument on this appeal. Popham v. City of Talladega, 742 F.Supp. 1504 (N.D.Ala.1989). Based upon that opinion, we affirm with the following observations.
 
 
 3
 During the celebration of his December 24, 1987 wedding, Ronald Popham was arrested for public intoxication. In addition to being intoxicated, he was emotional, depressed, and angry at the time of his arrest. Popham's belt, shoes, socks, and pocket contents were removed by jail personnel who placed him in a holding cell and at 9:30 p.m., ordered the cell monitored. Monitoring was accomplished by closed circuit television located on another floor of the jail where the camera was operated by a radio dispatcher. Popham was last checked on physically when the shift ended at 11:00 p.m., after which there were no guards or jailers on duty. Sometime later, in a small space within the cell unviewed by the camera, Ronald Popham hanged himself from the bars by his blue jeans. He was discovered at 5:15 a.m. Christmas morning.
 
 
 4
 Mrs. Popham claims several constitutional violations in relation to her husband's suicide. An aggregation of these claims charge, in effect, that her husband had a right to be protected from committing suicide while incarcerated, that he was not properly monitored after being placed in a cell by himself, and that his jailers were not properly trained to identify prisoners who might show a tendency to suicide.
 
 
 5
 This court recently held that to prevail under section 1983 for a constitutional violation of substantive due process, that "deliberate indifference" to the prisoner's taking of his own life must be displayed. Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir.1989). This is a difficult burden for a plaintiff to meet and becomes the key issue in this case.
 
 
 6
 The deliberate indifference standard arose in the context of a medical case in which a prisoner claimed inadequate medical treatment. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976). Because jail suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested. See Anderson v. City of Atlanta, 778 F.2d 678, 686-87 (11th Cir.1985) (pretrial detainee's constitutional rights are denied by deliberate indifference to his serious medical needs just as deliberate indifference denies the rights of a convicted prisoner). The standard requires a strong likelihood rather than a mere possibility that the self-infliction of harm will occur, State Bank of St. Charles v. Camic, 712 F.2d 1140, 1146 (7th Cir.1983), and will not be found to exist in the face of negligence only. Stewart v. Love, 696 F.2d 43, 44 (6th Cir.1982) (prison officials' mere negligence is insufficient to give rise to culpability under the Eighth Amendment); Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989) (despite eight previous suicides, plaintiff showed mere negligence which does not establish a Sec. 1983 claim). Boyd v. Harper, 702 F.Supp. 578 (E.D.Va.1988) (merely negligent conduct displayed by failure to respond to information that detainee was weeping in cell and by failure to basically "jail train" official in charge of classification interview).
 
 
 7
 In the context of jail suicides, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies. See, e.g., Freedman v. City of Allentown, 651 F.Supp. 1046 (E.D.Pa.1987), aff'd, 853 F.2d 1111 (3rd Cir.1988) (In this context, deliberate indifference must go hand in hand with knowledge of an impending suicide); Estate of Cartwright v. City of Concord, 618 F.Supp. 722, 728 (N.D.Cal.1985), aff'd, 856 F.2d 1437 (9th Cir.1988) (suicide threat made under the influence of drugs or alcohol did not furnish jailers with reason to believe decedent was suicidal).
 
 
 8
 When examined in this light, the facts in this case do not rise to a level sufficient to support the constitutional standard of deliberate indifference. Popham was not unknown at the Talladega City Jail, having been incarcerated there on previous occasions which began as early as the mid-1970's. He did not threaten suicide on any previous episode of imprisonment. The fact that he attempted to commit suicide two days earlier was unknown to the officials who arrested him and placed him in a holding cell. When plaintiff visited her husband earlier in the evening, she failed to give police officers and jail officials notice of her husband's recent attempted suicide, which further permitted officials to be without the slightest suspicion that Popham might attempt to take his life. Some form of knowledge of the danger is required to support a section 1983 action. Camic, 712 F.2d at 1146.
 
 
 9
 The officials did not know that Popham threatened suicide from his jail cell. This threat was overheard and discounted as "drunk talk" by an old acquaintance of Popham's who occupied a nearby cell that evening. He made no attempt to notify authorities.
 
 
 10
 A prison custodian is not the guarantor of a prisoner's safety, Freedman, 853 F.2d at 1115. The standard procedures followed by Popham's custodians, i.e., removal of shoelaces, belts, socks, and pocket contents demonstrate an effort to assure his safety and a lack of deliberate indifference. Closed circuit cell monitoring is further reflective of a custodial concern for his welfare. See e.g., Costilow v. City of Eastlake, 793 F.2d 1291 (6th Cir.1986) (text in Westlaw, 1986 WL17054). The fact that the camera did not pick up every corner of the cell might be evidence of negligence, but could hardly demonstrate deliberate indifference.
 
 
 11
 Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference. Edwards, 867 F.2d 1271 (11th Cir.1989). See also Francis v. Pike County, 708 F.Supp. 170 (S.D. Ohio E.D.1988), aff'd, 875 F.2d 863 (6th Cir.1989) (police officer's failure to remove belt with which detainee hanged himself did not subject defendants to liability in absence of evidence that should have made policeman aware of suicidal tendencies). Cases in which genuine issues of fact regarding constitutional violations have been found in connection with jail suicide presented facts which are not present here. Cf., Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir.1988) (jailers rescued decedent from previous suicide attempt); Partridge v. Two Unknown Police Officers, 751 F.2d 1448 (5th Cir.1985), withdrawn, 755 F.2d 1126 (5th Cir.1985), substituted opinion, 791 F.2d 1182 (5th Cir.1986) (it was known that decedent had attempted suicide in previous confinement); Guglielmoni v. Alexander, 583 F.Supp. 821 (D.Conn.1984) (after faked suicide, inmate hanged himself); Matje v. Leis, 571 F.Supp. 918 (S.D. Ohio 1983) (inmate's counsel informed jail officials of suicide threat).
 
 
 12
 Mrs. Popham alleges liability related to the failure to train jail personnel to screen detainees for suicidal tendencies. Similar contentions have been rejected by other courts: Roberts v. City of Troy, 773 F.2d 720 (6th Cir.1985) (claim that decedent fit profile of high suicide risk which screening would have detected is insufficient to establish deliberate indifference). See also, Freedman, 651 F.Supp. at 1048. The Supreme Court has held that inadequate police training may provide a basis for section 1983 liability only where failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
 
 
 13
 Plaintiff complains of the fact that there were no guards on duty for the last shift and the failure of the camera to cover the small area of the cell in which the decedent committed suicide, but cites no cases for the proposition that deliberate indifference is demonstrated if prisoners are not seen by jailers at all times.
 
 
 14
 Nor can it be argued that a city policy not to prevent jail suicide was established by the mayor's decision to leave the night guard position unfilled during the last quarter of 1987, despite a suicide within the facility two weeks before Popham took his life. A single decision, made prior to the first suicide, does not represent a discernible city policy to maintain an inadequately staffed, non-suicide proof jail facility. See Anderson, 778 F.2d at 686-87 (to constitute a policy or custom, practice must be so well-settled that it shows a force of legislative pronouncement).
 
 
 15
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 With the City, Mrs. Popham names the mayor, the police chief, two police officers, and five councilpersons as defendants