966 F.2d 606
 Jessie Leon TITTLE, as Administrator of the Estate of
Stephen Warren Tittle, Plaintiff-Appellant,
Rebecca Alexander, as Administratrix of the Estate of Tom
Harrell, Plaintiff-Intervenor-Appellant,
v.
JEFFERSON COUNTY COMMISSION, David Orange, John Katopodis,
Reuben Davis, Jim Gunter, Chris McNair, Jefferson
County, Giattina, Fisher & Co.,
Architects, Inc., Defendants-Appellees.
 No. 91-7054.
 United States Court of Appeals,
Eleventh Circuit.
 July 14, 1992.
 
 Yearout, Myers & Traylor, P.C., Clarence L. McDorman, Birmingham, Ala., for R. Alexander.
 Jeffrey W. Bennitt, Kizer & Bennitt, John F. Kizer, Jr., Birmingham, Ala., for Jessie Leon Tittle.
 Charles S. Wagner, Jeffrey M. Sewell, Jefferson County Attorney's Office, Birmingham, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH, Circuit Judge, GODBOLD and JOHNSON*, Senior Circuit Judges.
 KRAVITCH, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants Jessie Leon Tittle and Rebecca Alexander, representing the estates of Stephen Warren Tittle and Tom Harrell, respectively, ("Plaintiffs") appeal from a district court order granting the motion for summary judgment of Defendants-Appellees Jefferson County (Alabama), the Jefferson County Commission, and several individual County Commissioners who were sued in their official capacities ("Defendants"), in a suit under 42 U.S.C. § 1983. The action alleged Eighth and Fourteenth Amendment violations for practices and policies relating to the housing, supervision, and protection of prison inmates. Plaintiffs allege that defendants violated the constitutional rights of the decedents in two ways: (1) that the County failed to train jail supervisors in how to identify prisoners with suicidal tendencies, a policy of deliberate indifference that led to the suicide of these inmates; and (2) that the County was deliberately indifferent to the need of the inmates of the Jefferson County Jail by housing prisoners in cells that they knew to be dangerously defective and probably would result in inmate suicide. The district court granted the defendants' motion for summary judgment on both of the plaintiffs' theories. For the reasons set out below, we AFFIRM the lower court's judgment as it relates to the claim of failure to train, REVERSE the judgment regarding the dangerously defective condition of the prison cells, and REMAND the issue to the district court for further proceedings.
 
 I. Facts
 A. Stephen Tittle
 
 2
 Stephen Tittle was arrested by the Birmingham Police Department in the early morning of October 25, 1988. He was charged with robbery and placed in the Jefferson County Jail. Jail personnel processed Tittle according to the standard policy, which included a brief questionnaire, filled out by the deputy on duty, containing several questions to determine if an inmate was contemplating suicide. If an inmate demonstrated suicidal tendencies, he or she was placed in the medical ward of the jail and remained under constant supervision.[1] The district court found that the deputy sheriff on duty screened Tittle and that Tittle stated that he had never been under the care of a psychiatrist, had never attempted suicide, was not dependent on drugs or alcohol, was not using street drugs, and had no serious illness or injury. The deputy also reported that the inmate exhibited no abnormal or unusual behavior. Tittle was therefore placed with the general population of the jail.
 
 
 3
 Plaintiff Jessie Tittle (Stephen's father) submitted affidavits from Stephen Tittle's brothers, Russell and Michael, stating that Stephen appeared depressed and anxious, and that they told a deputy sheriff at the jail that they were worried about his behavior and that Stephen should be watched. Russell Tittle asserts that the deputy replied that all inmates "are watched." The deputy on duty during that time was deposed and stated that she has no knowledge of speaking with either Russell or Michael Tittle. Stephen's parents were also deposed. They stated that they had no reason to believe that Stephen was contemplating suicide and that they had no knowledge of their son Michael speaking to jail personnel about Stephen's mental state.
 
 
 4
 At 1:55 a.m. on October 28, 1988, a deputy sheriff found Tittle hanging in his one-person cell from a bar across the window of the cell, tethered by a strip of bed sheet around his neck. The guard had checked Tittle at 12:16 a.m. and the inmate had appeared to be sitting on his bunk with the lights off. When the guard returned forty-five minutes later and Tittle was in the same position, the guard realized that Tittle was hanging from the window bar. The deputy could not enter the cell because he did not possess an emergency key. Control room personnel opened the cell and cut Tittle down from the bar. Paramedics were unable to revive him and pronounced him dead. The inmate in the next cell subsequently reported having heard a gasping sound approximately four hours prior to the discovery of Tittle's body; the coroner's report confirmed Tittle's time of death as approximately four hours prior to discovery.
 
 B. Tom Harrell
 
 5
 On February 10, 1989, Tom Harrell was charged with violation of the terms of his probation and placed in a cell in the Jefferson County Jail. The deputy sheriff questioned Harrell, who stated that he had never been under the care of a psychiatrist or attempted suicide, was not dependent on alcohol or drugs, was not using street drugs, was taking no medication prescribed by a physician, and had no serious medical condition. The deputy sheriff who processed Harrell indicated that the inmate exhibited no abnormal or unusual behavior. Harrell had been committed to the Jefferson County Jail on three previous occasions and jail records indicated no prior suicidal behavior, attempted suicide, or threats of suicide during any of these earlier incarcerations. Harrell was therefore placed with the general population of the jail.
 
 
 6
 Contrary to his statements to jail personnel, Harrell had previously been under psychiatric care and had attempted suicide at least once previously. Billy Cox, a friend of Harrell's, stated in an affidavit that when he visited Harrell in jail, Harrell was talking "crazy." Cox claimed that he called the jail the week Harrell killed himself, and informed an unnamed person that Harrell "had a problem and had tried to kill himself before." He added that Harrell should be watched closely because he might attempt suicide again. According to Cox, the man to whom he spoke (presumably a deputy sheriff), responded that Harrell would be all right.
 
 
 7
 A deputy sheriff found Harrell hanging from a bar across the window of his one-person jail cell on February 18, 1989 at 10:42 p.m. He had last been observed alive at 10:00 p.m. during a routine check of the cell block. The officer who first observed Harrell to be hanging from the bar did not open the cell because he did not possess an emergency key. He notified personnel from the control room, who opened the cell and cut Harrell down from the bar. Paramedics could not revive Harrell and pronounced him dead at 11:00 p.m.
 
 C. Suicides at the Jefferson County Jail
 
 8
 Tittle and Harrell were not the first inmates to commit suicide at the new Jefferson County Jail, nor were they the first to hang themselves from the horizontal bar across each window. The district court found that from October 20, 1987 through December of 1989, fifty-seven suicide attempts occurred at the Jefferson County Jail, four of which were successful. Twenty-nine of the attempts were by hanging; the majority--including Tittle's and Harrell's--were made from the iron bar across the window in each cell. Harrell's suicide was the third successful suicide in six months; all of these deaths were accomplished through the use of the iron bar across the window.[2]
 
 
 9
 Subsequent to the suicides at issue here, the County changed the jail's suicide prevention policy, resulting in fewer attempted suicides and fewer successes. Jefferson County has now placed an officer in charge of instruction on suicide prevention, as well as instituted more in-depth questioning of incoming inmates to determine whether they have suicidal tendencies. In 1989, after Harrell's suicide, the horizontal security bars across the cell window were covered; since that time there have been no successful suicides in the jail.
 
 II. Procedural Background
 
 10
 Plaintiff Jessie Leon Tittle filed suit against the following defendants: Jefferson County; the County Commission; five individual Commissioners (sued in their official capacities);[3] and Giattina, Fisher & Co., Inc., the architectural firm that designed the Jefferson County Jail,[4] alleging deprivations of the rights of Stephen Tittle in violation of 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, and various state claims arising from the same facts. Plaintiff Rebecca Alexander, administratrix of the Estate of Tom Harrell, filed a motion to intervene in the suit, which the district court granted.
 
 
 11
 Plaintiffs allege that the suicides were a proximate result of the practices, customs, and policies of Defendant Jefferson County and its agents (the County Commission and its individual Commissioners), and its failure adequately to train jail supervisors in the supervision and protection of the inmates of the Jefferson County Jail. The plaintiffs also allege that Jefferson County and its agents violated the rights of the decedents because they were deliberately indifferent to a dangerous defect in the decedents' cells--the horizontal bar across the cell window from which Harrell and Tittle both hanged themselves.
 
 
 12
 Defendants contend that because neither inmate manifested suicidal tendencies or threatened suicide at the time of his commitment or thereafter, there was no indication to jail personnel that any extraordinary measures were needed during decedents' confinement at the Jefferson County Jail. Defendants maintain that the Sheriff of Jefferson County, who is not a defendant in this action, is responsible for the operation of the jail and responsible for promulgating all procedures, rules and regulations governing the operation of the jail by deputies whom he assigns to serve on the jail staff. The Sheriff, they contend, is the party who is responsible for the training and supervision of the deputies assigned to the Jefferson County Jail. The Commission's role, according to the defendants, is to provide the necessary funds for the operation of the Jefferson County Sheriff's Department, of which the jail is an operating division. Further, defendants contend that to hold them legally responsible for the suicides from the horizontal bar would amount to a requirement that Jefferson County construct a suicide-proof jail. Therefore, defendants submit that they are not liable for the suicide of either Tittle or Harrell.
 
 
 13
 Defendants filed a motion for summary judgment on August 14, 1990, supplemented on September 7, 1990, contending that there was no genuine issue of material fact, that defendants were entitled to judgment as a matter of law based on the standard of Edwards v. Gilbert, 867 F.2d 1271 (11th Cir.1989), and asserting the defense of qualified immunity as a bar to the complaints. The district court granted the motion, and the plaintiffs filed this appeal.
 
 III. Analysis
 A. Standard of Review
 
 14
 According to Celotex v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the party moving for summary judgment must demonstrate that the non-moving party lacks evidence to support an essential element of its claim. In order to survive the motion, the non-moving party must demonstrate that there is "evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). We review a district court's grant of summary judgment de novo, Hoffman v. Allied Corp., 912 F.2d 1379, 1383 (11th Cir.1990), applying the same legal standards that bound the district court. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1080 (11th Cir.1990). We must resolve all genuine factual disputes in favor of the non-moving party. Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir.1987).
 
 B. Qualified Immunity
 
 15
 Although the defendants raised the issue of qualified immunity in their amended motion for summary judgment, the district court did not consider that ground in granting their motion. However, "[b]ecause the availability of qualified immunity is a question of law, the district court's decision is subject to plenary review," Moore v. Morgan, 922 F.2d 1553, 1556 (11th Cir.1991), citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir.1989), and for reasons of judicial economy we will consider the merits of defendants' motion for qualified immunity.
 
 
 16
 This court has held "that it is the county, 'not the state, [that] has the responsibility for running the county jail under Alabama law.' " Id., quoting Parker, 862 F.2d at 1479. "Moreover, an action against a county official acting in his official capacity imposes liability on the entity that the official represents, so long as the entity received notice and an opportunity to be heard." Parker, 862 F.2d at 1475 (citing Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985)).
 
 
 17
 Municipal entities are not protected from compensatory damages by the doctrine of qualified immunity. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 reh'g denied, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980). Therefore, neither Jefferson County, nor the Jefferson County Commission, nor the individual commissioners acting in their official capacities, have qualified immunity.
 
 
 18
 C. Plaintiffs' Claims Under 42 U.S.C. § 1983
 
 
 19
 Section 1983 affords relief for individuals who have been deprived of a constitutional right by an individual who was acting under color of state law. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156-57, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Prison officials may be held liable for an inmate's suicide if they have demonstrated "deliberate indifference" to the prisoner's taking of his or her own life. Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir.1990) (citing Edwards v. Gilbert, 867 F.2d 1271 (11th Cir.1989)). As we said in Popham, "the standard requires a strong likelihood rather than a mere possibility that the self-infliction of harm will occur, and will not be found to exist in the face of negligence only." Id. (citations omitted).
 
 
 20
 Plaintiffs allege that the defendants were deliberately indifferent to the likelihood of the inmates' suicides in two distinct ways: (1) by failing to train jail supervisors to recognize prisoners with suicidal tendencies; and (2) by housing prisoners in cells that defendants knew to be dangerously defective and probably would result in inmate suicide.
 
 1. Failure to Train
 
 21
 The Supreme Court has established that government entities are not liable for the tortious conduct of their employees in section 1983 actions under the theory of respondeat superior; therefore, the plaintiffs in this case must establish that any "deliberate indifference" displayed by the jail officials towards the lives of the decedents arose from an official policy. Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, even if the court accepted appellants' evidence that jail officials disregarded the warning of relatives and friends with respect to decedents' mental conditions, the appellants were still required to prove that the acts of the jail officials followed from an official policy of deliberate indifference established by the defendants--the County, the County Commission and the Commissioners. This they did not do.
 
 
 22
 The record shows that the jail maintained a significant screening procedure to identify and segregate prisoners with mental health problems. Appellants contend that the screening procedures at the Jefferson County Jail were not the best available methods, but such a shortcoming does not demonstrate the intentional lack of concern that appellants must prove in order to prevail under section 1983. See Popham, 908 F.2d at 1564-65. Even assuming that the named defendants, rather than the Sheriff, were responsible for establishing the screening procedures, there is no evidence that the County was deliberately indifferent in utilizing these methods.
 
 
 23
 Accordingly, we affirm the district court's ruling in favor of the defendant's motion for summary judgment as it relates to plaintiffs' claim that the defendants failed properly to train the deputies responsible for screening the inmates for suicidal tendencies.
 
 
 24
 2. Deliberate Indifference to Dangerous Condition in the Jail
 
 
 25
 The district court did not discuss in detail the plaintiffs' claim that the defendants exhibited deliberate indifference to the probability that the inmates would commit suicide in a dangerously defective cell. The district court construed this claim as a demand that the County build a suicide-proof jail or assume that all prisoners have suicidal tendencies.
 
 
 26
 Although a prison custodian is not the guarantor of a prisoner's safety, Popham, 908 F.2d at 1564, both Edwards and Popham establish that prison officials have a responsibility to protect inmates from known dangers. In those cases, we refused to hold the defendants liable because the evidence failed to demonstrate that the defendants had knowledge that the decedents were likely to commit suicide. The claim presented in this case, however, is different. Plaintiffs allege that those responsible for maintaining the jail were aware of a dangerous condition in the cells that created a strong likelihood, rather than a mere possibility, that inmates would attempt, and likely succeed at, suicide.
 
 
 27
 Each cell in the jail was equipped with an iron pipe six inches in diameter, filled with concrete and bolted to concrete blocks. Each cell also had a durable bed sheet strong enough to be used as a rope. Plaintiffs presented evidence to the district court that seven attempted suicides by hanging preceded Tittle's death, and that there were another four attempted suicides by hanging between those of Tittle and Harrell. Plaintiffs also presented evidence to suggest that Sheriff Bailey was aware of the opportunity for suicide presented by the horizontal bar and had informed the County Commission and the individual Commissioners of the danger the bar presented.
 
 
 28
 In this context, the question of whether or not these particular inmates had exhibited suicidal tendencies is irrelevant because the basis of the claim is that the jail itself constituted a hazardous condition and that the defendants were deliberately indifferent to that danger. It is true that prison officials are not required to build a suicide-proof jail. By the same token, however, they cannot equip each cell with a noose. It falls to the plaintiffs on remand to establish that defendants were aware of the problems and were deliberately indifferent to the probability that inmates would attempt to commit suicide by hanging themselves from the bar.
 
 
 29
 We hold here only that plaintiffs are not foreclosed as a matter of law from establishing deliberate indifference under section 1983 on the basis of the facts presented to the district court. The facts of this case, taken in the light most favorable to the plaintiffs, indicate that the horizontal bar across the window of each prison cell furnished an accessible and inviting tool for prisoners to commit suicide. There is also sufficient evidence for a jury to find that the defendants were aware that inmates were taking advantage of this tool with alarming frequency and that the defendants chose to do nothing to stop them. The ultimate responsibility for the design, building and maintenance of the jail rests with the defendant County, County Commission and the Commissioners. § 11-14-10, Ala.Code (1975). Because the evidence, with all inferences drawn favorably to the plaintiff, would meet the deliberate indifference standard of Edwards and Popham, it was error to grant summary judgment for the defendants.
 
 IV. Conclusion
 
 30
 We hold that the district court was correct in granting summary judgment for the defendants on the plaintiffs' claim regarding a failure to train, but reverse the order for summary judgment on the claim involving the dangerous condition of the building because a jury could find that Jefferson County, the Jefferson County Commission and the individual Commissioners manifested a deliberate indifference to the medical needs of the inmates who committed suicide and could have taken steps to remove the instrument of their suicides, but through callous indifference failed to do so. We therefore REVERSE the district court's grant of summary judgment and REMAND for a trial on the merits of the plaintiffs' complaint regarding the dangerous condition of the building.
 
 
 31
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 We refer here to the suicide prevention policy in effect at the time of Harrell's and Tittle's suicides
 
 
 [2]
 There had been no successful suicides in the old jail between 1976 and 1980
 
 
 [3]
 The Commissioners named are David Orange, John Katopodis, Reuben Davis, Jim Gunter, and Chris McNair
 
 
 [4]
 The district court dismissed the case against the architects, a ruling which the plaintiffs do not appeal; therefore, Giattina, Fisher is no longer a party to this case