**Robert A. HOFER, III; Ellen Hofer, as mother and next friend, Plaintiffs,**

v.

**CITY OF AUBURN, ALABAMA, et al., Defendants.**

No. CIV.A.00–A–1306–E.

United States District Court, M.D. Alabama, Eastern Division.

July 25, 2001.

Joan B. Singleton, Bessemer, AL, for plaintiffs.

Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for defendants.

## *MEMORANDUM OPINION*

### I. *INTRODUCTION*

ALBRITTON, Chief Judge.

This matter comes before the court on a Motion for Summary Judgment (doc. # 52) filed by Defendants on May 4, 2001. Robert A. Hofer, III ("Plaintiff") and Ellen Hofer, as mother and next friend, originally filed this complaint on September 25, 2000.[1] In the amended complaint, Plaintiff

---

1. Defendant asserts that this suit is brought on behalf of Robert Hofer by his mother, Ellen Hofer, as "mother and next friend," and

brings claims for violations of 42 U.S.C. §§ 1981, 1983, and 1985. Count One alleges a claim for deliberate indifference to Plaintiff's mental condition, Count Two alleges a claim for failure to train, instruct, supervise, control, and discipline police officers, and Count Three alleges a claim for deliberate indifference to a design defect.[2] For the reasons to be stated, Defendants' Motion for Summary Judgment is due to be GRANTED.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *BACKGROUND*

On September 25, 1999, the Auburn Police Department received two calls, one by

---

that this suit should be dismissed because Robert Hofer has not been legally determined to be incompetent. The court recognizes that the Complaint does not specify clearly who is bringing this suit, Robert Hofer or his mother on behalf of Robert Hofer. It appears to the court that the Complaint alleges alternative plaintiffs, i.e. either Robert Hofer or his mother on behalf of Robert Hofer brings this suit. Both of these individuals have the same claim and one of the two is the correct plaintiff based on the capacity of Robert Hofer. Be-

cause the court finds that summary judgment is due to be granted, the court need not resolve whether Ellen Hofer or Robert Hofer is the proper plaintiff based on Robert Hofer's capacity.

**2.** Counts Four and Five of the amended complaint assert claims against Defendant Sherlock, Smith & Adams, Inc. The court dismissed all claims against Sherlock, Smith & Adams, Inc. by order entered on April 5, 2001 (doc. # 47).

Plaintiff and one by a neighbor, relating to a domestic disturbance at Plaintiff's home. Several officers, including Officer Jason S. Jenkins ("Jenkins") and Lt. Michael Thee ("Thee"), went to the neighbor's home. They interviewed Louise Coady ("Coady") who claimed that Plaintiff, her boyfriend, slapped her, kicked her in the stomach, and forced her to have sexual intercourse. (Thee Aff. at 2). Thee observed that Coady's neck was red, her face was slightly swollen, she was covered in blood from the waist down, and she was bleeding below the waist. (Thee Aff. at 2).

Jenkins then went to Plaintiff's house and Plaintiff permitted Jenkins to enter the house. Once inside, Jenkins observed a great deal of blood on the floor. Jenkins read Plaintiff his Miranda rights and then interviewed Plaintiff. During the interview, Plaintiff admitted he grabbed Coady's arm, but denied hitting or raping Coady. Jenkins arrested Plaintiff for domestic violence. (Jenkins Aff. at 2).

Prior to being transported from the scene to the jail, Plaintiff advised Jenkins that he was on medication, and Jenkins permitted Plaintiff to gather his medications. Jenkins transported Plaintiff to the Auburn City Jail. According to Jenkins, Plaintiff did not make any comments indicating any possibility of suicide and there was nothing in Plaintiff's conduct that would indicate suicidal tendencies. (Jenkins Aff. at 2). Plaintiff alleges that at some point he told the officers that he would hang himself if sent to jail. Plaintiff does not state to which officers he made his suicide threat. (Pltf. Dep. at 72, lines 10–12).

Jenkins took Plaintiff to the booking room. Plaintiff listed on his Medical Information Sheet that he took medication for an anxiety disorder. (Def. Resp. Mot. Summ. J. at Ex. K). During Plaintiff's time in the booking room, Corrections Officer L.E. Salary ("Salary") observed that Plaintiff remained calm and cooperative, made no threats of suicide, and did not exhibit any suicidal tendencies. (Salary Aff. at 2).

Officers removed Plaintiff's belt and shoelaces and then placed Plaintiff in a jail cell. Pursuant to City policy, prison officers visually inspect each prisoner a minimum of at least once each half hour. (Downing Aff. at Ex. D). In following this policy, Salary made frequent and regular inspections of the jail cells and detainees. (Salary Aff. at 2). With regard to Plaintiff, Salary inspected Plaintiff's jail cell at a minimum of once every thirty minutes. The record indicates that Salary checked Plaintiff's cell at 12:00 p.m. and checked Plaintiff's cell again ten minutes later when she discovered Plaintiff hanging via his socks from a coat hook in the cell. (Brown Aff. at Ex. D). Salary immediately contacted her supervisor and paramedics. The paramedics arrived three minutes later and transferred Plaintiff to the University of Alabama Hospital at Birmingham. Although Plaintiff was resuscitated, the injury he sustained during his suicide attempt left him brain-damaged.

## IV. DISCUSSION

### A. Deliberate Indifference to Plaintiff's Mental Condition

 Although the Eighth Amendment's prohibitions against cruel and unusual punishment do not apply to pretrial detainees, the minimum standard of care owed to a pretrial detainee under the Fourteenth Amendment is the same as under the Eighth Amendment. *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994). "Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care and a right to be protected from self-inflicted injuries, in-

cluding suicide." *Id.* (citations omitted). To prevail in a prisoner suicide case, a plaintiff must prove that a defendant displayed deliberate indifference to a prisoner's mental condition and the likely consequences of that condition. *Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir.1995). Moreover, a finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir.1990). The official must have notice of a "strong likelihood, rather than a mere possibility" that a prisoner would take his own life. *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994). Even if an official has notice of a strong likelihood that a prisoner will attempt to commit suicide, the prisoner must prove that the preventive measures taken were so inadequate as to be deliberately indifferent to the risk. *Id.*

 Defendants argue that Jenkins and Salary did not act with deliberate indifference because they had no notice of the possibility that Plaintiff would attempt to commit suicide. In support, Defendants offer affidavits from Jenkins and Salary who both state that Plaintiff made no suicidal threats to them and that they did not

observe any conduct by Plaintiff that would indicate any suicidal tendency. Plaintiff, however, stated in his deposition that he told the officers that if he was put in jail, he would hang himself.[3] Plaintiff also informed both Jenkins and Salary that he took medication for an anxiety disorder. Based on this record, especially Plaintiff's suicide threat, the court finds that a genuine issue of material fact exists as to whether Jenkins and Salary had notice of the possibility of suicide to a strong likelihood.[4]

 Although an issue exists as to whether the officers had notice of Plaintiff's suicidal tendencies, Plaintiff has failed to establish a genuine issue of material fact as to whether the preventive measures taken by Defendants constituted deliberate indifference. Plaintiff argues that Salary's acts constituted deliberate indifference because she placed Plaintiff in a cell by himself and did not monitor Plaintiff continuously. Salary, however, did not just place Plaintiff in a cell and completely abandon him. Rather, Salary checked on Plaintiff at least once every half hour as required by City policy and removed Plaintiff's shoelaces and belt prior to placing

---

3. Defendants assert that Plaintiff did not make this statement. Plaintiff states in his deposition that he remembers telling the officers that he would hang himself if put in jail. (Plaintiff Dep. at 72, lines 10–22). Plaintiff, however, also stated in his deposition that he does not remember telling the officers that he would hang himself if sent to jail. (Plaintiff Dep. at 73, line 15, through 74, line 21). Plaintiff's deposition testimony is inconsistent as to whether he made this statement. Because this matter is before the court on summary judgment, the court views the evidence in the light most favorable to Plaintiff, the nonmovant. Accordingly, the court in deciding this summary judgment motion accepts Plaintiff's factual assertion that he told the officers that he would hang himself if put in jail.

4. Plaintiff also argues that Defendants should have been aware of Plaintiff's suicidal tendencies because Plaintiff met the profile of a high suicide risk. Simple knowledge that a detainee fits the profile of a high suicide risk is not enough to establish knowledge of a strong likelihood of suicide. *Popham,* 908 F.2d at 1563; *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir.1989); *see also Barber v. City of Salem*, 953 F.2d 232, (6th Cir.1992). ("Implicit in *Popham* is a holding that simple knowledge that the detainee fits the profile of a high suicide risk is not enough. It must be knowledge specific to that particular detainee."). The court, therefore, rejects Plaintiff's contention that this profile information provided notice to Jenkins and Salary of Plaintiff's suicidal tendencies.

Plaintiff in the jail cell. Salary's conduct tends to disprove deliberate indifference.

■ The Eleventh Circuit has rejected the argument that failing to guard an inmate with suicidal tendencies continuously constitutes deliberate indifference. *Belcher*, 30 F.3d at 1400. Moreover, the Eleventh Circuit has held that similar monitoring procedures of a prisoner who has suicidal tendencies and who was placed in a cell alone tends to disprove deliberate indifference, and shifts to the plaintiff the burden of producing some evidence of deliberate indifference. *Williams v. Lee County, Alabama*, 78 F.3d 491, 493 (11th Cir.1996). In *Williams*, the Eleventh Circuit held that periodic checks between fifteen and twenty minutes did not constitute deliberate indifference. *Id.*, at 492–93. Although the court recognizes that in this case the frequency of once every half an hour was longer than the time in *Williams*, Plaintiff has failed to produce any evidence to illustrate that the frequency of the periodic checks was obviously inadequate. The evidence shows that Plaintiff was found hanging just ten minutes after he was last checked by Salary. "Absent evidence that frequent periodic checks were obviously inadequate," a plaintiff does not have "a jury question as to deliberate indifference." *Rhyne v. Henderson County*, 973 F.2d 386, 393 (5th Cir.1992).

■ In addition to the periodic checks, Salary's removal of Plaintiff's belt and shoelaces before placing him into the jail cell illustrates a lack of deliberate indifference. *Popham*, 908 F.2d at 1564 (holding that removal of a prisoner's shoelaces, belts, socks, and pocket contents demonstrate an effort to assure his safety and a lack of deliberate indifference). The failure to remove Plaintiff's socks is not such a distinction from *Popham* as to allow, without more, a finding of deliberate indifference. The court finds that Defendants did not act with deliberate indifference by placing Plaintiff in a cell by himself and by periodically checking on Plaintiff.[5]

### B. Design Defect

■ In order to find Defendants liable for a defective jail, Plaintiff must show that Defendants were deliberately indifferent, in that "there [was] a strong likelihood, rather than a mere possibility, that self-infliction of harm would result

---

**5.** Although Plaintiff alleges in his Response to Defendant's Motion for Summary Judgment that Plaintiff was falsely arrested, Plaintiff has not made a claim for false arrest in his Complaint. Even assuming that Plaintiff properly raised a false arrest claim, the court finds that the arrest was lawful. An individual has a federally protected right to be free from unlawful arrest resulting in a significant restraint of liberty and violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990). An arrest is unlawful if it is not supported by probable cause. *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."

*United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.1992). Probable cause determinations are guided by reviewing the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In examining the totality of the circumstances, Jenkins had probable cause to arrest Plaintiff for domestic violence. The record indicates that Coady claimed that Plaintiff slapped and kicked her. The officers observed that Coady's neck was red and her face was slightly swollen. When Jenkins asked Plaintiff about the incident, Plaintiff admitted to grabbing Coady's arms, but denied hitting Coady. Based on Coady's statements and her injuries, the court finds that Jenkins had probable cause to arrest Plaintiff for domestic violence.

from the defendant's actions or inactions." *Tittle*, 10 F.3d at 1540–41. Plaintiff argues that the City acted with deliberate indifference by not removing a convenient and inviting tool for committing suicide, a coat hook.[6] Plaintiff asserts that the coat hook was inherently dangerous because it was an easy-access protrusion which could support Plaintiff's weight. In support, Plaintiff cites the National Center on Institutions and Alternatives' ("NCIA") publication *Training Curriculum on Suicide Detection and Prevention in Jails and Lockups* ("NCIA Curriculum").[7] (Pl. Supp. Resp. Defs. Mot. Summ. J. at Ex. T). The NCIA Curriculum recommends that "[a]s a suicide prevention measure, the jail should make every effort to remove easy-access protrusions from cells and rooms. While it is more common for anchoring devices, all fixtures should be given attention . . . ." NCIA Curriculum at 16–2. In addition, Plaintiff contends that Defendants should have been aware of the danger of protrusions because one person committed suicide at the City jail by hanging himself on another easy-access protrusion, a light fixture in the ceiling.

The court finds that this evidence does not establish a jury question as to whether Defendants were deliberately indifferent by not removing the coat hook from the jail cells. Plaintiff has failed to produce any evidence to show that Defendants read the NCIA Curriculum or had a duty to read the NCIA Curriculum. Without such evidence, the court will not consider the NCIA Curriculum in determining whether Defendants acted with deliberate indifference at the time of Plaintiff's attempted suicide. *Gilbert*, 867 F.2d at 1274–75 (holding that an article written by an expert on prison suicides would not be considered for the deliberate indifference analysis where the plaintiff presented no evidence that the officers read the article or why the officers had such a duty to read the article).

The evidence relating to the prior suicide did not increase the possibility of suicide to a strong likelihood in this case. The prior suicide occurred in 1992 and did not involve an individual hanging himself on the coat hook. Rather, the individual hanged himself on a light fixture in the ceiling by using torn sheets. (Downing Aff. at 1). This prior suicide did not make Defendants aware that the coat hook was a convenient and inviting tool for suicide and did not provide Defendants with knowledge that the coat hook could support Plaintiff's weight.

Plaintiff has produced no other evidence to show that Defendants knew that the coat hook was a known danger and could support a person's weight. On the other hand, there has been no suicide or attempted suicide in a manner similar to Plaintiff's attempt. Defendants also presented evidence that the jail has never received any recommendations, following inspections by the Department of Corrections or otherwise, to remove or alter the

---

**6.** Plaintiff also argues that the City acted with deliberate indifference by failing to redesign the jail so as to allow continuous observation of the inmates by the City's officers. As this court already stated, a city is not required to monitor continuously its detainees who have a strong likelihood of suicide. Instead, a city may make periodic checks on such an inmate. The court, therefore, finds that the City did not act with deliberate indifference by failing to redesign the jail so as to allow continuous

observation of the inmates by the City's officers.

**7.** The NCIA is a non-profit organization dedicated to developing quality programs and professional services that advocate timely intervention and unconditional care for all persons who come into contact with, *inter alia,* correctional systems. NCIA Organizational Information available at http://www.ncianet.org/ncia/ncia.html.

coat hook in order to prevent suicides. (Downing Aff. at 2–3).

 Moreover, the fact that one prior suicide occurred at the City jail by an individual who hanged himself from a protrusion, without more, did not increase the possibility of suicide to a strong likelihood. The Eleventh Circuit has rejected a design defect theory in a case where the plaintiff produced evidence of two prior suicides, one of which was committed in the same manner as plaintiff, and twenty-seven attempted suicides, some of which were committed in the same manner as the plaintiff. *Tittle*, 10 F.3d at 1540–41, 1544. The court held that "the fact that ... two suicides occurred before [the plaintiff] committed suicide, without more, did not increase the possibility of suicide to a strong likelihood." *Id.* at 1541. Likewise, this court finds that the one prior suicide did not increase the possibility of suicide to a strong likelihood. The court, therefore, finds that Plaintiff has failed to create a genuine issue of material fact as to whether Defendants acted with deliberate indifference with regards to an allegedly defective jail.

### C. Failure to Train

 Plaintiff alleges in his Complaint that the City's failure to train or supervise its employees in the handling of suicidal inmates constituted deliberate indifference to Plaintiff's health. "Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise." *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir.1993). Since the court has determined that Plaintiff did not suffer a constitutional deprivation, the court finds that Plaintiff's claim for failure to train, instruct, supervise, control, and discipline police officers fails.

### V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be GRANTED.[8] A separate Order will be entered in accordance with this Memorandum Opinion.

---

8. Because consideration of Plaintiff's Response to Defendant's Motion for Summary Judgment does not change the result, the Motion to Strike is due to be denied as moot.